**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Alberto SANDOVAL,**
**Defendant–Appellant.**

**No. 03–30486.**

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 4, 2004.

Filed Aug. 19, 2004.

Ordered Published Nov. 19, 2004.

Anne Walstrom, Federal Defenders of Eastern Washington and Idaho, Yakima, WA, for the appellant.

James P. Hagarty, Office of the United States Attorney, Yakima, WA, for the appellee.

Before: HALL, KLEINFELD, and CALLAHAN, Circuit Judges.

HALL, Senior Circuit Judge:

Jose Alberto Sandoval pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He challenges the district court's denial of his motion to suppress the evidence. He also challenges his sentence. We affirm the denial of the motion to suppress the evidence, but remand for resentencing because the sentence enhancement was based on an incorrect judgment that Sandoval's prior guilty plea to third-degree assault in Washington constituted a conviction of a crime of violence.

## BACKGROUND

At approximately 7:40 a.m. on September 20, 2002, the Yakima police received an anonymous phone call reporting that a 24–year–old Hispanic male with bushy hair known as "Budda" was pointing a gun at a 33–year–old white female named Michele Harris in front of Room 217 of the Red Apple Motel in Yakima. Several officers arrived at the motel less than five minutes later.

Officers Masters, Sanchez, and Fuehrer were the first to arrive. Officer Masters spoke with the manager, who told him that room 217 was on the back side of the motel. Officer Masters went through the breezeway, while Officers Sanchez and Fuehrer headed directly to room 217. All the officers had their weapons drawn as they moved.

As Officers Fuehrer and Sanchez approached the room, they saw a male and a female in a blue Lexus sedan that was slowly backing up outside of room 217 as if to leave the motel's parking lot. The man, Jose Alberto Sandoval, was in the passenger seat; the woman, Michele Harris, was in the driver's seat. Through an open window, the officers saw Sandoval waving his arms around. They could hear him yelling at Harris to "just go." Harris had her hands in plain view. Sanchez ordered Harris to turn the car off, but she did not. Officer Sanchez saw a dark object on Sandoval's lap, and began screaming that Sandoval had a gun. The car was revving loudly and the engine was smoking. The officers saw Sandoval reaching over and trying to get the car moving by pulling on the gear selector and pressing on the gas pedal with his hands. The occupants of the car did not comply with the three officers' repeated commands to turn off the ignition and show their hands. Soon Officer Sanchez succeeded in reaching through the open window to turn off the ignition.

Officer Dahl and Sergeant Hester arrived on the scene. Dahl tried to break in the passenger window by kicking it and then by hitting it with the butt of his shotgun, but the window would not fully break. Sergeant Hester opened the passenger door and ordered Sandoval to get out of the car at gunpoint. Hester saw a small semi-automatic pistol on the passenger side floorboard at Sandoval's feet and yelled out the gun's location. Still, Sandoval would not get out of the car. He continued to try to get the car in gear, and resisted Hester and Dahl's efforts to pull him out. So Officer Fuehrer grabbed Sandoval by the hair and, with the help of Hester and Dahl, pulled Sandoval out.

Sandoval refused to comply with the officers' commands to drop to the ground and put his hands behind his back. Officer Dahl punched Sandoval in his right rear kidney; Officer Masters struck him on the top of his head; and Sandoval was subdued. The officers found a bag of methamphetamine in Sandoval's left front shirt pocket.

Meanwhile, Officer Sanchez removed Michele Harris out of the driver's side of the vehicle and handcuffed her. Officer Sanchez found three bags of methamphetamine and two pipes in Harris's purse. After she was read her rights, Harris told Officer Sanchez that Sandoval was her ex-boyfriend and that he had pulled a gun on her. She said she had called a friend and told the friend to call the police. Officer Sanchez confiscated the pistol, which was not loaded. He found another bag of methamphetamine nearby on the ground of the parking lot.

On December 10, 2002, a federal grand jury indicted Sandoval on charges of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Sandoval filed a motion to suppress the evidence, which the district court denied. The district court concluded,

> Had the defendant cooperated with [the officers], the encounter might have concluded quickly; that the encounter did not conclude quickly was a function of his behavior. Virtually everything he did after he saw them suggested that criminal activity was afoot and that he posed a substantial threat to their safety. Although the officers employed increasing amounts of force as the encounter progressed, the amount of force they employed at each point in the encounter was reasonably proportionate to the risk posed by the defendant.

On June 11, 2003, Sandoval entered a conditional guilty plea and the district court sentenced Sandoval to 70 months in federal prison. Sandoval appeals, arguing that he was unlawfully seized based upon an anonymous tip that was not sufficiently reliable to justify the officers' actions. Sandoval also challenges his sentence.

## DISCUSSION

### I. STANDARD OF REVIEW

■ The court reviews *de novo* a district court's ruling on the suppression of evidence. *United States v. Fernandez–Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003). The court reviews underlying factual findings for clear error. *Id.*

■ The court reviews *de novo* a district court's determination that a prior conviction may be used to enhance a defendant's sentence under the United States Sentencing Guidelines. *United States v. Rodriguez–Rodriguez*, 364 F.3d 1142, 1147 (9th Cir.2004).

### II. ANALYSIS

#### A. Suppression motion

■ Under the Supreme Court's Fourth Amendment jurisprudence, an investigatory *Terry* stop is justified if there is reasonable suspicion that the suspect is engaged in, or is about to engage in, criminal activity, considering the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 7–8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■■ A number of events and circumstances combined to provide the officers with a particularized and objective basis for suspecting Sandoval of criminal activity: the telephone tip; the short interval of time between the telephone call and the officers' arrival; Sandoval's location in front of room 217 in the motel's parking lot; his evasive actions in the car; his

refusal to obey the officers' commands; and his possession of a weapon. The police tactics, while aggressive, did not convert the *Terry* stop into an arrest. The tactics constituted a reasonable response to legitimate safety concerns that resulted from Sandoval's uncooperative actions and possession of a weapon. Because the officers acted reasonably under the circumstances, the district court correctly denied Sandoval's motion to suppress the evidence.

## B. Sentencing

The district court applied a base offense level of 24, consistent with U.S.S.G. § 2K2.1(a)(2), in light of its finding that Sandoval had two prior felony convictions for "crimes of violence" as that term is defined in U.S.S.G. § 4B1.2(a). That subsection endorses Congress's definition of a "crime of violence" as any crime punishable by more than one year in prison that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a); 18 U.S.C. § 924(e)(2)(B).

■ The Supreme Court has mandated a "categorical approach" to sentencing under 18 U.S.C. § 924(e)(2)(B)(ii), holding that the inquiry "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States,* 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Under this approach, "the issue is not whether [the] actual conduct constituted an aggravated felony, but whether the full range of conduct encompassed by [the state statute] constitutes an aggravated felony ..." *United States v. Pallares–Galan,* 359 F.3d 1088, 1099 (9th Cir.2004) (citation omitted).

■ Under the categorical approach set forth in *Taylor,* third-degree assault in Washington does not qualify as a crime of violence as that term is defined in United States Sentencing Guideline § 4B1.2. Under Washington law, it is possible to commit third-degree assault through an unlawful touching that does not involve substantial physical force or seriously risk physical injury. *See State v. Hall,* 104 Wash.App. 56, 14 P.3d 884, 889 (2000). Consequently, that crime is not categorically a crime of violence. *United States v. Belless,* 338 F.3d 1063, 1068 (9th Cir.2003). Under the modified categorical approach, the information, plea agreement, and judgment in the record do not exclude the possibility that Sandoval's guilty plea to third-degree assault was for conduct that did not involve substantial physical force and did not seriously risk physical injury. We therefore conclude that Sandoval's prior guilty plea did not constitute a crime of violence under either the categorical or the modified categorical approach, and that Sandoval's sentence was improperly enhanced.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**