**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

DORA CHAUDHRY,
            *Defendant-Appellant.*

No. 04-50421

D.C. No.
CR-04-01388-JAH

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
June 10, 2005—Pasadena, California

Filed September 14, 2005

Before: Betty B. Fletcher, Pamela Ann Rymer, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge B. Fletcher;
Concurrence by Judge B. Fletcher;
Concurrence by Judge Fisher

**COUNSEL**

Chase Scolnick, Assistant Federal Public Defender, San Diego California, for the appellant.

Mark R. Rehe, Assistant United States Attorney, San Diego, California, for the appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

Appellant Dora Chaudhry appeals from her conditional-plea conviction for importation of marijuana in violation of 18

U.S.C. §§ 952 and 960. Chaudhry contends that border agents conducted an unreasonable search of her vehicle in violation of the Fourth Amendment when the agents drilled a 5/16-inch hole in the bed of her pickup truck, revealing a blue plastic material inside the bed of her truck. That discovery led agents to unveil several packages of marijuana located under a false bed of the pickup. Chaudhry moved to suppress the evidence, but that motion was denied. Because we conclude that a single hole with a diameter of 5/16 of an inch does not constitute a property search that is "so destructive as to require a different result," *United States v. Flores-Montano*, 541 U.S. 149, 156 (2004), we affirm.

## I.

On May 7, 2004, Chaudhry drove her Ford F-150 pickup truck to the San Ysidro Port of Entry in Southern California. In pre-primary inspection, a narcotics detector dog alerted on Chaudhry's vehicle by biting and scratching on the undercarriage of the truck.[1] Chaudhry was then referred to secondary inspection, where a 5/16-inch hole was drilled in the bed of the truck, revealing a blue plastic material. Inspector Jose Mella testified that, based on his experience, the blue plastic evidenced a probability that narcotics were hidden beneath the bed of the truck. He then used a saw and "jaws of life" to remove what turned out to be a false truck bed, revealing numerous bricks of what later tested to be marijuana. Inspectors took a series of photographs that were introduced into evidence at the suppression hearing.

Once the government disclaimed any reliance on the detec-

---

[1]Although this canine sniff would have provided the officers with probable cause if the canine team had proved reliable, *United States v. Cedano-Arellano*, 332 F.3d 568, 573 (9th Cir. 2003), the government decided during the suppression hearing not to rely on the dog sniff. We therefore entertain the fiction that the search was performed in the absence of suspicion.

tor dog alert, Chaudhry moved to suppress the marijuana evidence, contending that it had been seized in violation of the Fourth Amendment during a "destructive" or "intrusive" vehicle search unsupported by a reasonable suspicion of unlawful activity. The district court then denied the motion, ruling that the drilling of a 5/16-inch hole "was not the type of intrusive search that would trigger something other than a routine search description under *Flores-Montano*, and that no reasonable suspicion was required." The district court made clear that it was not relying on the dog alert as justification for its denial of the motion. Thus the only issue presented in the present appeal is whether the border patrol agents needed any degree of suspicion prior to drilling the hole.[2]

## II.

We review de novo the district court's ruling on a motion for suppression of evidence. *United States v. Sandoval*, 390 F.3d 1077, 1080 (9th Cir. 2004). Factual determinations underlying the district court's ruling are reviewed for clear error. *Id.*

**[1]** Last year, the Supreme Court unanimously held that under the Fourth Amendment, a vehicle search at the border involving the disassembly and reassembly of a vehicle's gas tank did not require a reasonable suspicion to believe the gas tank contained contraband. *United States v. Flores-Montano*, 541 U.S. 149, 155 (2004) ("the Government's authority to conduct suspicionless inspections at the border includes the authority to remove, disassemble, and reassemble a vehicle's fuel tank"). The Court first held that a vehicle's driver has no expectation of privacy in the contents of the vehicle's gas tank, then noted that the "procedure of removal, disassembly, and reassembly of the fuel tank . . . has [not] resulted in seri-

---

[2]Specifically, Chaudhry does not contend that the search involving the removal of the truck bed was unreasonable once the blue plastic was revealed.

ous damage to, or destruction of, the property." *Id.* at 154. However, the Court specifically allowed that "it may be true that some searches of property are so destructive as to require a different result." *Id.* at 156. The Court also "[left] open the question 'whether, and under what circumstances, a border search might be deemed 'unreasonable' because of the particularly offensive manner in which it is carried out.' " *Id.* at 154 n.2 (quoting *United States v. Ramsey*, 431 U.S. 606, 618, n.13 (1977)).

**[2]** We have since relied on *Flores-Montano* to allow for the suspicionless slashing of a vehicle's spare tire at the border.[3] *United States v. Cortez-Rocha*, 394 F.3d 1115 (9th Cir. 2005), *petition for cert. filed*, (U.S. May 25, 2005) (No. 04-10392). We followed a similar approach to that of the Supreme Court, declaring that destruction of a spare tire was not "so destructive as to require a different result," without defining what might constitute such an unreasonably destructive search. *Id.* at 1125. We further declined to adopt a balancing test, yet we relied heavily on an analysis of two primary considerations: the degree of damage to the vehicle and any potential effect on the safety or security of the vehicle. More specifically, we first reasoned that "[a]lthough cutting a spare tire is certainly damaging to that tire, the important factor is whether the procedure results in significant damage to, or destruction of, the vehicle," focusing on the "operation of the vehicle." *Id.* at 1119-1120. Second, we concluded that the "disabling of a spare tire [does not] undermine the immediate safety of the vehicle or threaten the security of the vehicle's driver or passengers." *Id.* at 1120.

**[3]** We have yet to address the issue of "exploratory drill-

---

[3]We have also concluded that a suspicionless search of a spare tire using a radioactive density meter called a "Buster" was not unreasonable because it was not destructive or intrusive, and because there was no potential harm to the motorist. *United States v. Camacho*, 368 F.3d 1182, 1185-86 (9th Cir. 2004).

ing" in suspicionless vehicle searches at the border since the Supreme Court's decision in *Flores-Montano*.[4] We now conclude that a single 5/16-inch hole drilled in the bed of a pickup truck does not require reasonable suspicion because it is not "so destructive as to require a different result." *Flores-Montano*, 541 U.S. at 156; *Cortez-Rocha*, 394 F.3d at 1125. There is little doubt that a hole the diameter of a pencil drilled into the bed of a pickup truck is not "significant damage, or destruction of, the vehicle" of a kind that would "hinder the operation of the vehicle." *Cortez-Rocha*, 394 F.3d at 1119-1120. Nor can Chaudhry plausibly argue that the hole "undermine[s] the immediate safety of the vehicle or threaten[s] the security of the vehicle's driver or passengers." *Id.* at 1120. While the Supreme Court also foreshadowed that a "border search might be deemed 'unreasonable' because of the particularly offensive manner in which it is carried out," *Flores-Montano*, 541 U.S. at 154, n.2 (quoting *United States v. Ramsey*, 431 U.S. 606, 618, n.13 (1977)), such was not the case here. In sum, a single small-diameter hole in a truck bed does not reduce the functionality, operation or safety of the vehicle, and the facts of this case do not demonstrate that the search was otherwise carried out in such an "offensive" manner as to be deemed unreasonable. Again we express no opinion as to how much destruction or intrusiveness might trigger the need for reasonable suspicion of criminal activity to justify a destructive search. We only determine that that threshold was not breached in the present case.

---

[4]In *United States v. Bennett*, 363 F.3d 947 (9th Cir.), *cert. denied*, 125 S. Ct. 363 (2004), law enforcement officers drilled three or four holes in a boat, held the boat overnight, then x-rayed it, during a border search that eventually revealed marijuana concealed in a hidden compartment. *Id.* at 949. Because reasonable suspicion existed, we did not determine whether the destructive and extended nature of the search would have rendered the search unconstitutional in the absence of such suspicion. *Id.* at 951. Indeed, we expressly reserved the question of whether exploratory drilling searches must be supported by reasonable suspicion. *Id.* at n.3.

Chaudhry cites to the three out-of-circuit cases, each mentioned by the Supreme Court in *Flores-Montano*, holding that destructive "exploratory drilling" searches require a showing of reasonable suspicion. *See Flores-Montano*, 541 U.S. at 154, n.2 (citing *United States v. Rivas*, 157 F.3d 364, 367 (5th Cir. 1998) (holding that drilling into body of trailer was a "non-routine" search that required reasonable suspicion); *United States v. Robles*, 45 F.3d 1, 5 (1st Cir. 1995) (holding that drilling into machine part was a "non-routine" search that required reasonable suspicion); *United States v. Carreon*, 872 F.2d 1436, 1444-45 (10th Cir. 1989) (holding that drilling into camper was a "non-routine" search that required reasonable suspicion)). Each of these cases relies on the distinction between "routine" and "non-routine" searches, a distinction that was specifically limited to searches of the person by the Supreme Court. *Flores-Montano*, 541 U.S. at 152. We therefore find them to be of little persuasive value.

III.

**[4]** In sum, we conclude that the drilling of a single small-diameter hole into a pickup truck bed that does not affect the operation or safety of the vehicle, and which was not carried out in a particularly offensive manner, does not require reasonable suspicion.

AFFIRMED.

B. FLETCHER, Circuit Judge, specially concurring:

I write separately to express my distaste for the government's game-playing in this case and in two others we heard on the same calendar: *United States v. Flores-Montano*, No. 04-50447; *United States v. Hernandez*, No. 04-50286. In each case there was reasonable and articulable suspicion of drug smuggling. But the government wanted confirmation that no

suspicion is required for extensive, intrusive searches at the border. This would have an ancillary benefit for the government — it would not have to prove the reliability of its drug sniffing dogs.

As a practical matter, border agents are too busy to do extensive searches (removing gas tanks and door panels, boring holes in truck beds) unless they have suspicion. Apparently no suspicionless search case has come along to allow the issue — how destructive and extensive a suspicionless search may be — to be presented in its pure form. So the government seized upon cases where there have been extensive searches based on clearly reasonable, articulable suspicion. In these cases, the government refuses to present evidence to support the suspicion. It prefers to test the limits of its right to search beyond what it can see (by drilling holes, removing gas tanks, etc.) without any suspicion whatsoever.

In each of the cases before us, border inspection agents made individualized observations regarding the persons and vehicles seeking entry, and in each case, those observations were sufficient to support a finding of reasonable suspicion of criminal or unlawful activity.[1]

- A narcotics detection dog alerted on the undercarriage of Ms. Chaudhry's pickup truck.

- A border agent observed that Mr. Flores-Montano avoided eye contact during questioning, and that his hands were shaking when he produced identification. The agent then tapped on the gas tank and noticed that it sounded solid.

---

[1]Likewise, *United States v. Cortez-Rocha*, 394 F.3d 1115 (9th Cir. 2005), involved a search conducted after a dog alert and a density meter reading indicating that the spare tire in question was not empty. Yet the government refused to rely on such evidence of suspicion to support its slashing of the tire.

Finally, a narcotics detection dog alerted on the vehicle.

- A narcotics detection dog alerted on the driver's side door of Mr. Hernandez's vehicle.

In each case, the government chose to create a dispute where none existed, rather than to prove up its officers' valid suspicions. The only issue on appeal in each case was the propriety of a fictional "suspicionless" search. These cases likely would not have been appealed had the government taken the trouble to present a modicum of evidence showing why the agent referred the vehicle to secondary for a search.

I see two problems with such an approach to litigation.[2] First, such appeals are essentially a request for an advisory opinion, as the dispute over whether or not a particular search may be conducted *in the absence of any suspicion* is an entirely fictional construct. Suspicion existed in each case, and in my view, review of cases at the appellate level is a waste of judicial resources. The only possible purposes are the government's desire to push the envelope to its limits: to find out just how much destruction it can do without any suspicion, and to avoid proving it uses reliable dogs. Second, because there is ample suspicion in each case, it is difficult for judges to consider the issue cleanly on an unencumbered record. Evidence of probable criminal activity, especially evidence of narcotics detector dog alerts, cannot help but color judges' views of the facts. We inevitably think "harmless error." I must admit that I take comfort in knowing that the border agents in these cases did not rip apart the defendants' cars on a whim. However, were I to decide a case where there is truly no suspicion, and where five or ten exploratory holes are drilled in the exterior walls of a vehicle, I might reach a different result.

---

[2]I emphasize that the issues in these cases are fabricated by the government's stance *in litigation*, not the actual facts of each search.

FISHER, Circuit Judge, specially concurring:

Like Judge Fletcher, I am troubled by the government's evident decision in this and other cases, including *United States v. Flores-Montano*, No. 04-50447, and *United States v. Hernandez*, No. 04-50286, to eschew reliance on dog alerts or other evidence supporting reasonable suspicion. That I join in the resolution of *these* three cases on their respective merits, given the limited nature and scope of the initial searches, does not mean I either endorse or feel bound by the government's litigation strategy.