# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

ENRIQUE CORTEZ-RIVERA,
            *Defendant-Appellant.*

No. 05-50207

D.C. No.
CR-04-02171-WQH

OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
June 9, 2006—Pasadena, California

Filed July 24, 2006

Before: Stephen Reinhardt, Stephen S. Trott, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Trott

---

**COUNSEL**

Ellis M. Johnston III and Steven F. Hubachek, Assistant Federal Public Defenders, San Diego, California, for the defendant-appellant.

Michael J. Crowley, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

---

**OPINION**

TROTT, Circuit Judge:

Enrique Cortez-Rivera appeals from his conviction following a conditional guilty plea for importation of marijuana in violation of 21 U.S.C. §§ 952 and 960. He asserts that the district court should have dismissed his indictment because the model instructions given to the grand jurors unconstitutionally invaded the province of the grand jury. He asserts also that the district court erred in denying his motion to suppress the marijuana found during a border search because the search damaged his vehicle, thereby requiring that the customs officers have reasonable suspicion prior to commencing the search.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. The model charge given to the grand jury did not violate Cortez-Rivera's Fifth Amendment right to indictment by a grand jury. The model instruction did not infringe upon the grand jury's independence because it used the term "should" rather than "shall," giving the grand jury leeway to depart from the instruction. This leeway, albeit slight, is sufficient to immunize the instruction from constitutional infirmity. Addi-

tionally, we hold that a defendant who moves to suppress evidence discovered during a border search of his vehicle bears the burden of demonstrating that the search damaged the vehicle and that the damage affected the vehicle's safety or operability. Because Cortez-Rivera failed to carry this burden, the border search was constitutional despite a lack of reasonable suspicion.

# I

On August 10, 2004, Enrique Cortez-Rivera drove his 1995 Ford Aspire to the Calexico, California Port of Entry, attempting to gain entry into the United States. During the primary search, a narcotics dog alerted on Cortez-Rivera's vehicle. The vehicle was taken to the secondary inspection area to be searched for contraband.

As part of the search, the customs officer pried open the rear interior quarter panel on the passenger side of the vehicle. Inside, he found several bags of marijuana. After arresting Cortez-Rivera and placing him in a holding cell, the customs officer continued searching the vehicle. He discovered additional packages of marijuana hidden in the floor of the vehicle and in the passenger side door. A total of forty-seven packages of marijuana, weighing 46.84 kilograms, were found in Cortez-Rivera's vehicle.

On August 18, 2004, a grand jury indicted Cortez-Rivera on one count of importation of marijuana in violation of 21 U.S.C. §§ 952 and 960, and one count of possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Cortez-Rivera filed a motion to dismiss the indictment, arguing that the district court's charge to the grand jury, which followed the model charge recommended by the Administrative Office of the United States Courts, unconstitutionally invaded the grand jury's independence and curtailed the scope of its inquiries. Concluding that the charge to the grand jury had been approved by *United States v. Mar-*

*cucci*, 299 F.3d 1156 (9th Cir. 2002), the district court denied the motion to dismiss the indictment.

Cortez-Rivera filed also a motion to suppress the marijuana found in his vehicle. He argued that because the border search caused damage to the vehicle itself, the customs officers needed reasonable suspicion to conduct the search. The government asserted that it did not need reasonable suspicion to search the vehicle at the border, and that it was not relying upon any reasonable suspicion that might have arisen from the narcotics dog alert. The district court denied the motion to suppress, concluding that reasonable suspicion was not needed. The district court found that although the search damaged the vehicle's quarter panel, the damage "did not affect the operation of the vehicle or the workings of the vehicle."

On December 7, 2004, Cortez-Rivera entered a conditional guilty plea to the importation charge, preserving his right to appeal the denial of his motions to dismiss the indictment and to suppress the marijuana. Cortez-Rivera was sentenced to twelve months and one day in custody with two years supervised release to follow.

Cortez-Rivera appeals the denial of the motion to dismiss the indictment and the denial of the motion to suppress the evidence.

## II

Cortez-Rivera argues that the district court erred in not dismissing the indictment. He contends that the district court's charge to the grand jury invaded the grand jury's independence and improperly circumscribed its inquiry. We review de novo the denial of a motion to dismiss an indictment. *United States v. Haynes*, 216 F.3d 789, 796 (9th Cir. 2000).

Although Cortez-Rivera objects to each of the instructions within the charge, he concedes that all but one were deemed

constitutional by our decision in *United States v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir. 2005) (en banc). The one instruction that he contends we have not analyzed previously concerns the grand jury's ability to consider the potential punishment of a crime. It states, "Furthermore, when deciding whether or not to indict, you should not be concerned about punishment in the event of conviction; judges alone determine punishment."

Cortez-Rivera traces our precedent concerning the model grand jury charge back to *United States v. Marcucci*, 299 F.3d 1156 (9th Cir. 2002), and asserts that we have recited the challenged instruction in the facts section of opinions, but that we have never analyzed the specific instruction. Even if Cortez-Rivera is correct that we have not considered the specific instruction, our analysis in *Marcucci* is controlling.

**[1]** After reviewing the history of the grand jury, the *Marcucci* court analyzed the challenged instruction—"[Y]ou *should* vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged." *Id.* at 1159 (emphasis added). We seized upon the distinction between "should" and "shall":

> The charge, by telling the jury that it "should" rather than "shall" or "must" indict if it finds probable cause, leaves room-albeit limited room-for a grand jury to reject an indictment that, although supported by probable cause, is based on governmental passion, prejudice, or injustice.'

*Id.* at 1164. We concluded that the instruction did not invade upon the grand jury's constitutional role because the instruction used the term "should," making the instruction permissive rather than mandatory. *Id.*; *see also Navarro-Vargas*, 408 F.3d at 1204-05.

**[2]** The distinction between "should" and "shall" is dispositive of Cortez-Rivera's contention. The contested charge stated, "Furthermore, when deciding whether or not to indict, you *should* not be concerned about punishment in the event of conviction; judges alone determine punishment." (emphasis added). According to our reasoning in *Marcucci*, by using "should," the challenged instruction does not place an absolute bar on considering punishment, but "leaves room-albeit limited room-for a grand jury to" consider punishment. Thus, the instruction does not preclude the grand jury from considering punishment and is therefore constitutional.

## III

### A

The district court's ruling on a motion to suppress evidence is reviewed de novo. *United States v. Chaudhry*, 424 F.3d 1051, 1052 (9th Cir. 2005). "Factual determinations underlying the district court's ruling are reviewed for clear error." *Id.*

**[3]** We have not addressed which party bears the burdens of production and persuasion in a motion to suppress evidence found during a border search, although, generally, "[t]he government bears the burden of justifying a warrantless search." *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991) (per curiam).

**[4]** Cortez-Rivera contends that because the search of his vehicle was warrantless, the government bears the burden of showing that it did not need reasonable suspicion to justify the border search. We disagree. Generally, when law enforcement conducts a warrantless search, the dispositive question is whether the search falls into one of the search warrant exceptions, such as a search incident to an arrest or a search pursuant to exigent circumstances. For border searches, however, that question is already resolved—searches performed at the border constitute an exception to the search warrant require-

ment. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). There is no question that a border search falls within a search warrant exception—the only question in determining the reasonableness of the search is whether the search caused excessive damage to the defendant's vehicle.

**[5]** General burden-shifting principles govern our decision to place the burden on the defendant rather than the government in cases of alleged damage to the vehicle. Burdens are generally placed on the party who is in the best position to present the evidence. *See*, *e.g.*, *United States v. New York, N.H. & H.R. Co.*, 355 U.S. 253, 256 n.5 (1957) ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary."). For a border search of a vehicle, a defendant is in the best position to know the condition of his vehicle immediately prior to the search and, therefore, is in the best position to determine whether and to what extent the search damaged his vehicle. For example, a defendant knows best whether his vehicles stalls, starts only half the time, or has an inoperable seatbelt. A contrary rule would require customs officers to inspect each vehicle's safety equipment and operability prior to commencing a search so that they could determine whether the search damages the vehicle.

**[6]** Additionally, placing the burden on the government would require that it prove a negative fact—that the search did not affect the vehicle's safety or operability. " '[A]s a practical matter it is never easy to prove a negative.' " *Sissoko v. Rocha*, 440 F.3d 1145, 1162 (9th Cir. 2006) (quoting *Elkins v. United States*, 364 U.S. 206, 218 (1960)). "For this reason, fairness and common sense often counsel against requiring a party to prove a negative fact, and favor, instead, placing the burden of coming forward with evidence on the party with superior access to the affirmative information." *Id.*

**[7]** We therefore hold that where a defendant moves to suppress evidence found during a border search and alleges that

the search caused damage to his vehicle, the burden is on the defendant to prove the existence of this damage, and that it affected the safety or operability of the vehicle. If the defendant carries this burden by a preponderance of the evidence, then the burden shifts to the government to demonstrate that it had reasonable suspicion to conduct the search.

## B

Although there was some damage to the vehicle in the case before us, the border search did not require reasonable suspicion. In *United States v. Flores-Montano*, 541 U.S. 149, 155-56 (2004), the Supreme Court held that reasonable suspicion was not necessary to conduct a border search involving the disassembly and reassembly of a vehicle's fuel tank. The Court found that the "procedure of removal, disassembly, and reassembly of the fuel tank . . . has [not] resulted in serious damage to, or destruction of, the property." *Id.* at 154. The Supreme Court stated, without deciding, that "it may be true that some searches of property are so destructive as to require a different result." *Id.* at 155-56. The Court also left "open the question whether, and under what circumstances, a border search might be deemed unreasonable because of the particularly offensive manner in which it is carried out." *Id.* at 154 n.2 (internal quotation marks omitted).

We have applied *Flores-Montano* to a variety of border searches and have yet to conclude that reasonable suspicion is required. *See, e.g.*, *United States v. Cortez-Rocha*, 394 F.3d 1115, 1125 (9th Cir. 2005) (holding that customs officers, without reasonable suspicion, could slash a vehicle's spare tire to search for contraband); *Chaudhry*, 424 F.3d at 1051 (holding that the exploratory drilling of a 5/16-inch hole in the bed of a truck during a suspicionless border search was constitutional). In each case, we focused on two main issues: (1) Did the search damage the vehicle in a manner that affected the vehicle's safety or operability, and (2) Was the search conducted in a particularly offensive manner. Cortez-Rivera

did not argue to the district court that the search affected the safety of the vehicle or that the search was conducted in an offensive manner, and, consequently, did not carry his burden on those two issues.[1] We therefore focus on the issue Cortez-Rivera raised below—whether the search damaged the vehicle in a manner that affected its operability.

[8] As the district court found, the search no doubt damaged the vehicle. Indeed, the government concedes that the search damaged the interior quarter panel. Cortez-Rivera, however, did not carry his burden of proving that this damage to the panel affected the vehicle's operability. In fact, it is difficult to imagine how even the complete destruction of the interior panel would affect the vehicle's operability. *See Cortez-Rocha*, 394 F.3d at 1119-20 (focusing on operability of the vehicle and not on damage to the component part). Consequently, we hold that the border search of Cortez-Rivera's vehicle was constitutional, despite a lack of reasonable suspicion.[2]

## IV

The district court properly denied the motion to dismiss the indictment. *Marcucci* identified a distinction between "should" and "shall." Pursuant to this distinction, the grand jury instruction that the jury "should" not consider punishment does not unconstitutionally invade the province of the grand jury. The district court properly denied also the motion

---

[1]Although Cortez-Rivera's reply brief argues that the search damaged the rear seat belt, he waived this argument by not raising it before the district court and by not raising it in his opening brief. *See Redd v. McGrath*, 343 F.3d 1077, 1081 n.6 (9th Cir. 2003).

[2]We are presented only with the question of whether the border search violated the constitution, which would trigger the exclusionary rule for evidence obtained from the search. As we stated in *Cortez-Rocha*, "any motorist whose vehicle has in fact been damaged during such a search is free to pursue recovery in the form of civil damages." 394 F.3d at 1120 (citing *Flores-Montano*, 541 U.S. at 155).

to suppress the marijuana. Although the search damaged the vehicle, Cortez-Rivera failed to carry his burden of proving that the damage affected the vehicle's safety or operability or that the search was conducted in a particularly offensive manner. Accordingly, the government did not need reasonable suspicion to conduct the search.

AFFIRMED.