# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

   v.

ELIDE T. CARUTO,
    *Defendant-Appellant.*

No. 09-50309

D.C. No.
3:06-cr-00281-
WQH-1

ORDER
AMENDING
OPINION AND
DENYING
REHEARING AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted
May 4, 2010—Pasadena, California

Filed December 8, 2010
Amended October 31, 2011

Before: Richard R. Clifton and Jay S. Bybee, Circuit Judges,
and Edward R. Korman,* District Judge.

Opinion by Judge Clifton

---

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

19721

**COUNSEL**

Timothy A. Scott, San Diego, California, for defendant-appellant Elide Caruto

George D. Hardy, Assistant United States Attorney, San Diego, California, for plaintiff-appellee United States of America.

## ORDER

The opinion filed on December 8, 2010, is amended as follows:

At pages 19620-21 of the slip opinion (627 F.3d 759, 768), the three paragraphs under the heading "III. Request for Grand Jury Voir Dire Materials" are replaced with the following two paragraphs:

> In addition to her main arguments about the constitutionality of the grand jury's instructions, Caruto included two paragraphs in her motion to dismiss the indictment seeking disclosure of the grand jury voir dire transcripts and an instructional video that the grand jury watched before it was charged. Concluding that "the disclosure of voir dire would invade the secrecy of the grand jury proceedings" and that Caruto had "not made [a] sufficient showing [of] the need for disclosure," the district court denied the request. Caruto challenges that decision.
>
> We do not need to decide whether the district court abused its discretion in declining the request, however. There is nothing in the refusal to disclose the grand jury voir dire transcripts or instructional video that would justify overturning Caruto's conviction by a petit jury. Any error on this score was harmless.

With the opinion as amended, the panel has voted to deny the petition for rehearing. Judge Clifton and Judge Bybee voted to deny the petition for rehearing en banc and Judge Korman has so recommended.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and rehearing en banc, filed January 27, 2011, is DENIED. No further petition for rehearing and/or petition for rehearing en banc may be filed.

## OPINION

CLIFTON, Circuit Judge:

Elide Caruto was convicted of importation of cocaine and of possession of cocaine with intent to distribute. She appeals from the district court's denial of her motion to dismiss the indictment against her. She principally challenges four instructions given to the grand jury, claiming that each violated the Grand Jury Clause of the Fifth Amendment. We affirm.

## I. Background

Caruto was charged by the government and indicted by a grand jury for importation of, and possession with intent to distribute, 34.5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 952, and 960. A jury convicted Caruto after a trial, but we reversed her conviction on grounds unrelated to this appeal and remanded for a new trial. *See United States v. Caruto*, 532 F.3d 822 (9th Cir. 2008) (reversing because the prosecutor's emphasis on omissions in Caruto's post-arrest statement violated due process).

On remand before Judge Hayes, Caruto moved to dismiss the indictment. She argued that instructions given by District Judge Larry A. Burns to the grand jury that handed up Caruto's indictment violated the Fifth Amendment. We describe the challenged instructions in detail below. The district court denied Caruto's motion. She was again convicted by another jury, and she timely filed this appeal.

## II.  Constitutionality of the Grand Jury Instructions

We review de novo the district court's denial of Caruto's motion to dismiss the indictment. *United States v. Haynes*, 216 F.3d 789, 796 (9th Cir. 2000).

"Federal courts draw their power to dismiss indictments from two sources": the Constitution, and the courts' inherent supervisory powers. *United States v. Isgro*, 974 F.2d 1091, 1094 (9th Cir. 1992). Caruto raises only claims of constitutional error, so we limit our consideration to whether the instructions her grand jury received met the requirements of the Grand Jury Clause of the Fifth Amendment.

**[1]** "The text of the Fifth Amendment simply provides for the right to indictment by a grand jury and does not explain how the grand jury is to fulfill this constitutional role."**[1]** *United States v. Navarro-Vargas*, 408 F.3d 1184, 1188 (9th Cir. 2005) (en banc). Such details were either assumed by the framers of the Bill of Rights or left to Congress, the Executive, and the Judiciary to flesh out. *Id.* Our inquiry into what the Constitution mandates is guided by the history of the grand jury in the Anglo-American tradition and by its structural role in our constitutional scheme. *Id.* at 1186; *see generally id.* at 1190-1202.

**[2]** " 'Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and per-

---

**[1]**The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger." U.S. Const. amend. V.

sonal ill will.' " *United States v. Marcucci*, 299 F.3d 1156, 1161 (9th Cir. 2002) (quoting *Wood v. Georgia*, 370 U.S. 375, 390 (1962)).

**[3]** The grand jury's ability to fulfill its historical role effectively flows in part from its unusual position in the Constitution's structure. "The grand jury belongs to no branch of government, but is a 'constitutional fixture in its own right.' " *Navarro-Vargas*, 408 F.3d at 1199 (quoting *United States v. Williams*, 504 U.S. 36, 47 (1992)). The Fifth Amendment "presupposes an investigative body acting independently of either prosecuting attorney or judge." *United States v. Dionisio*, 410 U.S. 1, 16 (1973) (internal quotation marks omitted). The Fifth Amendment may be violated if the independence of the grand jury in performing its historical function is substantially infringed. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-57 (1988); *Navarro-Vargas*, 408 F.3d at 1204, 1205 & 1206-07 (holding constitutional grand jury instructions that did not infringe upon functions "integral to the role of the grand jury" and did not "violate the grand jury's independence"); *Marcucci*, 299 F.3d at 1163-64 (holding constitutional instructions "consistent with the historical function of the grand jury" that "informed the grand jurors that they were not merely an arm of the government, but rather an independent body").

The citizens called to serve on a grand jury are given instructions by the district court regarding their role and function. Mindful of the grand jury's historical role and the constitutional guarantee of independence in fulfilling it, we turn to Caruto's objections to the specific instructions the district court gave to the grand jury that indicted her.

*A. Consideration of Punishment*

**[4]** Caruto first challenges an instruction to ignore potential punishment in deciding whether to indict. Her argument here is necessarily a narrow one, because we have already

rejected a constitutional challenge to a similar instruction. In *United States v. Cortez-Rivera*, 454 F.3d 1038 (9th Cir. 2006), we held that there was no constitutional error in a model charge reading: "Furthermore, when deciding whether or not to indict, you should not be concerned about punishment in the event of conviction; judges alone determine punishment." *Id.* at 1040-41. In its instructions to the grand jury that indicted Caruto, the district court delivered the permissible instruction verbatim, then elaborated on its theme, saying:

> Furthermore, when deciding whether or not to indict, you should not be concerned about punishment in the event of conviction. Judges alone determine punishment. If you think about it for a minute[,] because your function is a preliminary one anyway, it would presuppose guilt for you to be thinking about punishment. A person is still entitled to a trial, and the outcome of that trial is far from certain up until all the evidence has been presented and the trial jury begins to deliberate. So punishment should not concern you in the performance of your duties whatsoever.

Caruto contends that the judge's off-script addition to the model charge—in particular, the instruction that "punishment should not concern you in the performance of your duties *whatsoever*" (emphasis added)—rendered it unconstitutional. She argues that the added emphasis of "whatsoever" eliminated the "limited room . . . for a grand jury to consider punishment" that she maintains saved the instruction in *Cortez-Rivera* from unconstitutionality. *Cortez-Rivera*, 454 F.3d at 1041 (internal quotation marks omitted).

**[5]** Caruto misapprehends the basis for our decision in *Cortez-Rivera*. In that case we deemed "[t]he distinction between 'should' and 'shall' . . . dispositive." *Id.* at 1041. We concluded, following *Marcucci* and *Navarro-Vargas*, "that the instruction did not invade upon the grand jury's constitu-

tional role because the instruction used the term 'should,' making the instruction permissive rather than mandatory." *Id.* at 1040-41. It was this permissiveness, not the degree of emphasis in the remainder of the instruction, that "le[ft] room —albeit limited room—for a grand jury to consider punishment" and thus preserved the grand jury's historical prerogative. *Id.* at 1041 (internal quotation marks omitted). The addition of "whatsoever" to an already emphatic model instruction did not effectively change its character from permissive to mandatory. Because that is the distinction that matters under our precedent, we must reject Caruto's attempt to distinguish this instruction from the one that we previously upheld.

**[6]** Any error here was harmless, in any event. We recently observed that the Supreme Court, in *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988), "adopted the standard . . . that for errors brought to the district court's attention 'prior to the conclusion of the trial,' dismissal of the indictment 'is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.' " *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010). Nothing in this case supports the proposition that the grand jury would have refused to indict Caruto, who imported 34.5 kilograms of cocaine into the United States with the intent to distribute it, even if it had known that she was facing a ten-year sentence. Drug smugglers and dealers are not sympathetic figures. No facts about Caruto or her crime have been identified to us that might have generated sympathy in her particular case sufficient to fend off indictment. Facts that might prompt sympathy in a particular case are not likely to be known by the grand jury anyway, because defense counsel does not have a right to make a presentation to the grand jury, and the prosecutor is not obligated to present exculpatory evidence. *United States v. Williams*, 504 U.S. 36 (1992). Caruto has given no reason for us to have any serious concern, let alone to have

grave doubt, that the grand jury would not have indicted her had the district court's instruction not departed from the model charge. Any error here was harmless.

## B.    The Wisdom of the Criminal Laws

Caruto next contends, along similar lines, that the district court's elaboration regarding the "wisdom of the criminal laws" went so far beyond a permissible model instruction as to render the charge here unconstitutional. The model instruction, which we held constitutional in *Navarro-Vargas*, states: "You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you." *Navarro-Vargas*, 408 F.3d at 1202. The district judge recited the model instruction almost word-for-word, then supplemented it with additional commentary, saying:

> As grand jury, you are not to judge the wisdom of the criminal laws enacted by Congress.
>
> What that means is you are not to determine whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you. Are you helpless in this regard? No. You can go to the ballot box at the time of election, and if you disagree with the law, you can vote to change it or vote out of office those who support the law that you disagree with.
>
> But in this branch of government, the judicial branch of government, we apply the laws as the other branches give them to us. We don't pass on the wisdom of those laws whether we agree with them or not.

I can tell you as a United States District Judge, I frequently have to pass judgment on laws that were I a member of Congress, I would have voted the other way on some of the things, but my function is circumscribed here by that responsibility. So you must follow the law as it is given you by the U.S. Attorney, given from the code books enacted by Congress.

Caruto maintains that two of the court's additions rendered this instruction unconstitutional: (1) the suggestion that jurors could "go to the ballot box at the time of election, and if you disagree with the law, you can vote to change it or vote out of office those who support the law that you disagree with"; and (2) the court's comparison of the grand jury's role to that of members of the judiciary, who are obligated to "apply the laws as the other branches give them to us."

**[7]** On the first point, Caruto argues that the court's voting advice improperly limited the grand jury's power by implying that jurors could only oppose laws they disagreed with by voting against them. This implication, Caruto claims, disparaged the grand jury's power to refuse to indict for any reason. This argument fails because the court's additional language did not say that voting was jurors' exclusive recourse or alter the basic message conveyed by the instruction we approved in *Navarro-Vargas*.

**[8]** Caruto's second point is premised on the theory that the court informed the grand jurors that they were part of the judicial branch, denying them the independence that flows from operating, as the Constitution contemplates, outside of any branch of the government. We disagree with Caruto's understanding of what the court said. In context, it is clear that the court did not assign the grand jury to the judicial branch or any other branch of government. The judge merely drew an analogy between his own duty, as a member of the judiciary, to apply Congress's laws and the grand jury's duty,

under the concededly constitutional model instruction, not to question "whether or not there should or should not be a federal law designating certain activity as criminal."

**[9]** Neither of the challenged elaborations distinguished the "wisdom of the laws" instruction given in this case, in any constitutionally significant sense, from the model instruction we previously approved. The motion to dismiss the indictment on this ground was properly denied.

### C.	*Probable Cause and the Role of Magistrate Judges*

Caruto next contends that an instruction about the role of magistrate judges in making probable cause determinations unconstitutionally intruded on the grand jury's independence. Caruto argues that the court's explanation of how and when magistrate judges might be involved in cases the grand jury would hear implied that grand jurors could simply defer to a magistrate judge's probable cause finding instead of assessing probable cause independently. The court said:

> The cases that you will hear will come from [sic] you in various ways. Frequently, suspects are arrested during or shortly after the commission of a crime and taken before a magistrate judge, who then holds a preliminary hearing to determine whether there is probable cause to believe the person has committed a crime.

> If the magistrate judge finds such probable cause, the accused [sic] will direct that the accused be held for the action of the grand jury so that you can consider whether there should be an indictment.

> Now, in most circumstances you don't make the probable cause determination before the magistrate judge does. In most circumstances the U.S. Attorney will present a case to the grand jury before the mag-

istrate judge is ever called upon to make a preliminary determination of probable cause.

Under our rules, the person is entitled to a preliminary hearing within 10 days of being arrested. And frequently, they will agree to some postponement of that preliminary hearing so that they can read the reports that are generated in connection with the investigation of the case.

During that period of 10 days or postponed period that may be longer, that the U.S. Attorney inevitably will present the case for your judgment. It is infrequent that the magistrate judge would make a probable cause determination. That is primarily your function.

**[10]** It seems apparent that, as sometimes happens in extemporaneous comments, the district judge's speech strayed from what he actually intended. It is not entirely clear what a listener would understand from this statement, but we conclude that it would not be what Caruto contends. Her argument depends, at best, on a weak inference she draws from the judge's words. The court did not explicitly connect a magistrate judge's probable cause determination—regardless of when it might occur—to the task of the grand jury, nor suggest that the grand jury's determination was in any way constrained by what a magistrate judge might find.

It is evident that this passage was primarily intended to explain the typical timeline of a criminal case, and where the grand jury's work usually fits into the process. The court explained that cases "[f]requently" go before a magistrate judge first, because defendants are "entitled to a preliminary hearing within 10 days of being arrested." However, "[i]n most circumstances," cases are presented to a grand jury "before the magistrate judge is ever called upon to make a pre-

liminary determination of probable cause," sometimes due to postponement of the preliminary hearing.

**[11]** This digression may not have been very helpful to the grand jurors, but we do not believe that it had a negative impact. The court cured any confusion its explanation might have caused about whether a magistrate judge or grand jury typically acts first with its final admonition that making a probable cause determination was "primarily [the grand jury's] function." A separate instruction also emphasized that determining probable cause was a duty that the grand jury should not abdicate. The court said: "As members of the grand jury, you, in a very real sense, stand between the Government and the person accused of a crime. It is your duty to see to it that indictments are returned only against those whom you find probable cause to believe are guilty and to see to it that the innocent are not compelled to go to trial." In light of this explicit direction that evaluating probable cause was the grand jury's duty, the discussion of magistrate judges did not undermine the grand jury's independent judgment.

Moreover, even if the grand jury might have been misled, that error would not justify reversal of Caruto's conviction now. At this point, the existence of probable cause is not in doubt, because Caruto was subsequently found guilty by the petit jury based on proof beyond a reasonable doubt. The alleged error was not structural error and was rendered harmless by Caruto's subsequent conviction. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986); *Navarro*, 608 F.3d at 538.

### D.   The Grand Jury's Relation to the U.S. Attorney

Caruto's final objection arises out of another instruction that she claims limited the grand jury's constitutionally guaranteed independence. In the course of explaining the very concept of grand jury independence, the court told jurors: "It is extremely important for you to realize that under our Constitution, the grand jury is an independent arm of the United

States Attorney. It's not part of the U.S. Attorney's Office nor an agent of the federal law enforcement agency." Caruto argues that calling the grand jury "an independent arm of the United States Attorney" unconstitutionally associated it with the prosecution.

**[12]** Context reveals that the phrase Caruto singles out was simply an inadvertent misstatement, which the court immediately corrected. The very next sentence told jurors that they were "not part of the U.S. Attorney's Office." The court eliminated any confusion that might have arisen with an unequivocal clarification that told grand jurors to

> always bear in mind that ultimately you have to depend on your own independent judgment. Never become an arm of the United States Attorney's Office. It is fine for you to form relationship[s] with the prosecutors that you'll see on a regular basis. But keep in mind that you must be independent of them. You don't defer to them in exercising your judgment as a grand jury. You rather exercise that judgment independently. The government lawyers are prosecutors, and you are not. You are independent judges of the facts. If the facts suggest to you that you should not indict, then you should not do so, even in the face of opposition or statements by the U.S. Attorney. It is up to you, ultimately, to make that decision.

Far from limiting the grand jury's independence, the entirety of the court's instruction emphatically underscored the grand jury's independent role. It did not violate the Fifth Amendment.

### III.   Request for Grand Jury Voir Dire Materials

In addition to her main arguments about the constitutionality of the grand jury's instructions, Caruto included two paragraphs in her motion to dismiss the indictment seeking

disclosure of the grand jury voir dire transcripts and an instructional video that the grand jury watched before it was charged. Concluding that "the disclosure of voir dire would invade the secrecy of the grand jury proceedings" and that Caruto had "not made [a] sufficient showing [of] the need for disclosure," the district court denied the request. Caruto challenges that decision.

We do not need to decide whether the district court abused its discretion in declining the request, however. There is nothing in the refusal to disclose the grand jury voir dire transcripts or instructional video that would justify overturning Caruto's conviction by a petit jury. Any error on this score was harmless.

**AFFIRMED.**