B. FLETCHER, Circuit Judge,
concurring in part and dissenting in part, with whom SCHROEDER, PREGERSON, FISHER, and PAEZ, Circuit Judges, join:
I join the majority opinion except as to discussion section B.3. I respectfully dissent from the court’s decision to overrule Sandoval-Lua v. Gonzales, 499 F.3d 1121, 1130-31 (9th Cir.2007), and Rosas-Castaneda v. Holder, 655 F.3d 875, 883-84 (9th Cir.2011). The majority view on this issue leads to a result that is unjust to lawful permanent residents seeking cancellation of removal and that Congress cannot have intended.
Our opinion in Sandoval-Lua is thorough and well-reasoned. In it we considered whether a lawful permanent resident who was removable based on a conviction for a controlled substance offense could seek cancellation of removal. SandovalLua, 499 F.3d at 1123-24. We began by determining that Sandoval-Lua’s California conviction (under a statutory provision virtually identical to the one under which Young was convicted) was not categorically an aggravated felony because the California statute criminalizes conduct not covered by the federal Controlled Substances Act. Id. at 1128. Next, we turned to the modified categorical approach and found, as in Young’s case, that the judicially noticeable documents were inconclusive as to the nature of Sandoval-Lua’s conviction. Id. at 1129.
Finally, we held that Sandoval-Lua had “affirmatively proven under the modified categorical analysis that he was not necessarily ‘convicted of any aggravated felony.’” Id. at 1130 (quoting 8 U.S.C. § 1229b(a)(3)). In doing so, we made clear that we had considered that Sandoval-Lua bore the burden of proof under 8 C.F.R. § 1240.8, but that under the categorical approach there are only two possible results: the record of conviction either establishes that the applicant was necessarily convicted of an aggravated felony or the record does not. Id. at 1131-32. We correctly explained that the evidentiary limits imposed by Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), are not merely practical — they also cabin the court’s inquiry to the correct legal question, which is whether the lawful *991 permanent resident has been “convicted” of an aggravated felony, not whether he engaged in conduct that falls within the definition of an aggravated felony. Id. at 1131-32; see also Carachuri-Rosendo v. Holder, — U.S. -, 130 S.Ct. 2577, 2586, 177 L.Ed.2d 68 (2010) (explaining that the text of 8 U.S.C. § 1229b(a)(3) directs courts to determine the nature of the lawful permanent resident’s conviction, not his conduct).
We recently considered whether the REAL ID Act changed Sandoval-Lua’s result, and we concluded that it did not. Rosas-Castaneda, 655 F.3d at 884. As we explained in Rosas-Castaneda, 8 U.S.C. § 1229a(c)(4)(A) merely codified the burden of proof imposed on the alien by 8 C.F.R. § 1240.8, which we carefully analyzed in Sandoval-Lua. Id. at 883-84; see also H.R.Rep. No. 109-72, at 169 (2005), 2005 U.S.C.C.A.N. 240, 294 (Conf. Rep.) (“The new paragraph also codifies the current requirement that an alien applying for relief or protection from removal bears the burden of satisfying the eligibility requirements for that relief or protection, and also that he or she merits the relief as a matter of discretion, if the relief is discretionary.” (emphasis added)). We should adhere to our prior precedents and hold that Young’s inconclusive record of conviction carried his burden of proof.
For the reasons that the majority opinion elegantly sets out, it makes no sense to discard the categorical approach or Shepard’s limitation on the documents to be considered in determining whether a lawful permanent resident has been convicted of an aggravated felony. But I cannot agree that Congress intended that an application for cancellation of removal be decided on the basis of whether state court records happen to be sufficiently clear to prove a negative (i.e. that the lawful permanent resident was not convicted of an aggravated felony). Indeed, the clarity of state court plea or conviction records will often depend upon the habits and preferences of the individual trial judge and the clerk of the court. The decision to remove a lawful permanent resident from this country should not turn on the vagaries of state court record keeping.
Even in cases where there exist state court records conclusively showing that a conviction was not for an aggravated felony, applicants may be unable to obtain them for a variety of reasons — for example, because of language barriers, a lack of information about the court system, their detained status, or an inability to pay fees for copies of court records. In contrast, the government has access to such documents. As Young points out, the law frequently places the burden of production on the party in the better position to obtain the evidence, even when the opposing party bears the burden of proof.[1] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038, 1041 (9th Cir.2006) (“Burdens are generally placed on the party who is in the best position to present the evidence.”); Dubner v. City & Cnty. of San Francisco, 266 F.3d 959, 965 (9th Cir.2001). Our current rule effectively does just that, by creating an incentive for government ah torneys to obtain all relevant conviction documents and provide them to the IJ in removal proceedings. Under the majority’s approach, however, the government *992 may produce only minimal state court records sufficient to show that a person is removable on some ground other than conviction for an aggravated felony — for example, conviction for a drug crime. The burden then shifts to the legal permanent resident to prove a negative — that he has not been convicted of an aggravated felony. . See 8 C.F.R. § 1240.8(d). The government can stand by as the lawful permanent resident attempts to produce further records of conviction, which the government may already have or be able to obtain more easily.
Young’s case illustrates the mischief that the majority’s rule will work. The government submitted to the IJ records relating to Young’s two California drug convictions. Those records were insufficient to establish that Young had been convicted of an aggravated felony under the modified categorical approach. After the panel decided this case, the government obtained a transcript of Young’s 2005 guilty plea. Contrary to the government’s assertions, there was no reason it could not have obtained the transcript six years ago and presented it to the IJ in order to establish that Young was convicted of an aggravated felony. If the government had done so, it would have increased the reliability of the administrative decision in this case and likely avoided years of appellate litigation.
My concern, however, is what will happen in a future case where a transcript or other state court record contains information helpful to a pro se detained immigrant. Suppose a lawful permanent resident pleaded guilty to a charging document alleging that he did A and B, where only B would constitute an aggravated felony. There is a plea transcript that makes clear that the lawful permanent resident pleaded guilty to A but not B. If the government does not produce that transcript, which its attorneys may have no reason to do, how will the lawful permanent resident be able to locate it, or even know that it exists? That lawful permanent resident will be denied the opportunity to even try to show that he merits a favorable exercise of the attorney general’s discretion through a grant of cancellation of removal. Congress cannot have intended such an arbitrary result.
Sandoval-Lua and Rosas-Castaneda harmonized § 1229a(e)(4) and § 1229b(a)(3) by placing the burden of proof squarely on the applicant for cancellation of removal, but requiring that the kind and quantum of evidence necessary to carry that burden be evaluated in light of the evidentiary limits imposed by the modified categorical approach. I would remain faithful to those well-reasoned precedents, which comport with the demands of fairness.

. The term "burden of proof” encompasses "two separate burdens: the 'burden of persuasion’ (specifying which party loses if the evidence is balanced), as well as the ‘burden of production’ (specifying which party must come forward with evidence at various stages in the litigation).” Microsoft Corp. v. i4i Ltd. P’ship, - U.S. -, 131 S.Ct. 2238, 2245 n. 4, 180 L.Ed.2d 131 (2011). That the government bears the burden of production does not shift the burden of persuasion, which still rests with the applicant.