**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

TIM JAMES COLLINS,
            *Defendant-Appellant.*

No. 10-50344

D.C. No.
8:08-cr-00209-
JVS-1

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
April 11, 2012—Pasadena, California

Filed June 22, 2012

Before: Andrew J. Kleinfeld and Milan D. Smith, Jr.,
Circuit Judges, and Algenon L. Marbley, District Judge.*

Opinion by Judge Marbley

*The Honorable Algenon L. Marbley, United States District Judge for
the Southern District of Ohio, sitting by designation.

**COUNSEL**

Jean-Claude Andre, Assistant United States Attorney (argued); Curtis Arthur Kin, Assistant United States Attorney, Mieke Biesheuvel, Assistant United States Attorney, Robert E. Dugdale, Assistant United States Attorney, for plaintiff-appellee United States.

Robert Stephen Hanna (argued), for defendant-apellant Tim J. Collins.

**OPINION**

MARBLEY, District Judge:

Tim James Collins appeals his conviction and imposition of a 60-month sentence following his entry of a plea of guilty to a single charge of possessing child pornography that had been shipped in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Collins challenges his conviction and sentence on three bases: (1) the district court's acceptance of Collins's guilty plea violated Federal Rule of Criminal Procedure 11; (2) the First Superseding Indictment was invalid due to improper instructions submitted to the grand jury; and (3) the lifetime term of supervised release imposed by the district court is unreasonable and unconstitutional. Collins contends that, as a result of these errors, the district court's judgment must be vacated, and he is entitled to negotiate about re-pleading under the *status quo ante* immediately after his initial, August 18, 2009, plea. Collins alternatively contends that the lifetime term of supervised release and certain conditions of release should be struck from his sentence.

The district court did not err in accepting Mr. Collins's guilty plea, and Collins's challenges to the grand jury instruc-

tions were untimely and therefore waived. Accordingly, we AFFIRM Collins's conviction. We hold, however, that the district court committed procedural error by failing to provide adequate analysis for the imposition of the residency restrictions in Collins's lifetime term of supervised release. We, therefore, VACATE the supervised release portion of his sentence, and REMAND the case to the district court to resentence Collins under the First Superseding Indictment. The district court's articulated reasons for its imposed sentence must show that it properly analyzed all the required factors to be considered under 18 U.S.C. § 3553(a) before imposing terms and conditions of supervised release which are substantively reasonable, in light of Collins's offense characteristics and the goals of sentencing.

## I.   BACKGROUND

### A.   Factual History

On December 19, 2007, an FBI Special Agent, working undercover, used peer-to-peer network software to view lists of videos and images stored on Collins's computer. The agent downloaded and viewed three images that appeared to be child pornography. On March 6, 2008, agents executed a federal search warrant at Collins's residence in Anaheim, California. During the search, law enforcement officers seized Collins's computer equipment, including several compact discs and a Seagate brand hard drive ("the hard drive").

A search of the compact discs and the hard drive revealed images depicting actual minors engaged in sexually explicit conduct, as well as eleven videos depicting minors engaging in sexually explicit conduct. Collins was interviewed the day that his computer media were seized. He admitted to downloading child pornography images for approximately six years and to searching the internet for child pornography. The images and visual depictions had been shipped or transported in interstate or foreign commerce by any means, including

computers. Collins obtained the videos by using a computer. Collins knew that the videos showed a minor engaged in sexually explicit conduct, and were made using a minor engaging in sexually explicit conduct.

Additionally, a woman, "M.A.," told FBI agents that in 2005, when she was a fifteen year-old girl, Collins traveled to the Philippines where she lived and had sexual intercourse with her multiple times knowing that M.A. was only fifteen. Collins admitted to having had a sexual relationship with M.A., but disputes that he knew she was underage at the time.

## B.   Procedural History

On August 6, 2008, a grand jury ("the original grand jury") returned a single-count indictment against Collins, charging him with a violation of 18 U.S.C. § 2252A(a)(5)(B) for possessing child pornography on one of the seized computer hard drives. On October 2, 2008, the district court empaneled a new grand jury ("the October 2008 Grand Jury") and instructed the new jurors. On June 24, 2009, the October 2008 Grand Jury returned a two-count First Superseding Indictment against Collins, both counts being for violations of 18 U.S.C. § 2252A(a)(5)(B) based on the child pornography material found in his possession on March 6, 2008.

On July 15, 2009, Collins and the government entered into a plea agreement in which Collins agreed "to plead guilty to count one of the superseding indictment." In exchange for Collins's guilty plea, the government agreed, *inter alia*, to move to dismiss the remaining count of the First Superseding Indictment and not to prosecute Collins for his 2005 sexual conduct with "M.A.," or for his possession of additional child pornography, neither of which had been charged in the First Superseding Indictment.

On August 18, 2009, the district court held a change of plea hearing. After placing Collins under oath, the court thor-

oughly questioned him and advised him of his constitutional rights, which he waived. Taking the elements directly from Collins's plea agreement, the government recited the elements required to establish a violation of 18 U.S.C. § 2252A(a)(5)(B) for possession of child pornography, as charged in Count One of both the original and the First Superseding Indictments, and as set forth in the plea agreement. Collins admitted to the facts and elements of his offense as set forth in the plea agreement. Collins then re-affirmed his desire to plead guilty.

The district court accepted Collins's guilty plea. In doing so, however, the court misspoke and, instead of asking Collins how he desired to plead to count one of the superseding indictment, the court asked Collins how he desired to plead to count one of "the indictment." No objections were raised to the validity of the guilty plea, and the hearing was adjourned.

Realizing its misstatement, the district court contacted the parties and scheduled a second hearing for August 31, 2009. At the August 31, 2009 hearing, the court announced its previous error, and proposed placing Collins under oath again to clarify that Collins intended to plead to Count One of the First Superseding Indictment. Collins's lawyer stated: "We don't object to that proceeding." The government also had no objections. The court then placed Collins under oath and reminded him about the prior "extensive discussion" at the change of plea hearing where Collins pled guilty. The court asked Collins if there was anything from their prior discussion that Collins wanted to change. Collins answered, "No, Your Honor."

The court then stated to Collins that: "at the end [of the prior hearing], the concluding question was 'how do you plead to Count One of the Indictment.' I made an error. I should have said the 'First Superseding Indictment.' " The court asked Collins if he had discussed this issue with his lawyer. Collins responded that indeed he had. The court then asked the question again, "Sir, how do you plead to Count

One of the First Superseding Indictment?" Collins responded, "Guilty." The court accepted Collins's plea and made several findings before ending the hearing, including a finding that Collins "entered his plea freely and voluntarily with a full understanding of the charges against him and the consequences of his plea."

On July 12, 2010, the district court sentenced Collins to a total of 60 months' imprisonment.[1] The district court also imposed, over the objections of Collins, a lifetime term of supervised release, and a special assessment of $100. 18 U.S.C. § 3583(k); USSG § 5D1.2(b)(1).

In the court's sentencing memorandum explaining its decision to impose a lifetime period of supervised release, the court cited the "policy of the Guidelines to impose a maximum term of supervised release," but also indicated it understood the need to "make a particularized determination and . . . not rely on generalities." The court explained that the seriousness of Collins's offense, downloading and sharing a "substantial volume" of "hard core child pornography," warranted the need for a life term of supervision. The court added, however, that "[i]f [Collins] demonstrates rehabilitation after a number of years, he is free to seek termination of supervised release."

As part of the life term of supervised release, and again over the objections of Collins, the district court imposed several special conditions of supervised release. These conditions include prohibiting Collins from frequenting or loitering "within 100 feet of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or

---

[1]Collins was assigned a Criminal History Category of I. The district court then adopted a variance from the recommended Sentencing Guidelines range by subtracting two levels on the basis of Collins's potential childhood abuse, and his military service. Collins' 60-month sentence was three months above the lower level of a Level 25 offense.

any other places primarily used by persons under the age of 18" ("Condition 11"), as well as a residency restriction, referred to as "Condition 15," which provides:

> The defendant shall not reside within 2,000 feet of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or any other places primarily used by persons under the age of 18. The defendant's residence shall be approved by the probation officer, and any change in residence must be pre-approved by the probation officer. The defendant shall submit the address of the proposed residence to the probation officer at least ten days prior to any scheduled move.

In response to Collins's objections to Condition 15, the court simply responded that, "[t]he short answer is that as a general matter, Collins must follow the law as a condition of supervised release, and this restriction is mandated by California law," referring to California Penal Code section 3003.5, which imposes a similar 2,000-foot residency restriction on all registered sex offenders. The court also added that, "[e]ven if this were not the case, the restriction is a proper measure to ensure protection of the public given the nature of the crime, and the Ninth Circuit has approved even more stringent restrictions." Collins timely appealed.

## II.  JURISDICTION

We have jurisdiction over this appeal from a conviction and final decision of the district court under 28 U.S.C. § 1291.

## III.  DISCUSSION

### A.  Acceptance of Collins's Plea of Guilty

#### 1.  Standard of Review

Federal Rule of Criminal Procedure 11 governs negotiation, entry and acceptance of pleas. We review an appellant's sub-

mission of Rule 11 violations for plain error where the defendant failed to raise them in the district court. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *United States v. Bowory*, 595 F.3d 1045, 1049 (9th Cir. 2010). Under a plain error standard of review, an error in the district court requires reversal "only if it affected the defendant's substantial rights." *United States v. Monzon*, 429 F.3d 1268, 1271 (9th Cir. 2005) (holding that, to evaluate the effect of a Rule 11 error, "we must look to the entire record and not to the plea proceedings alone").

For an error to affect substantial rights, "in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). Certain "structural" Rule 11 errors, however, have been deemed so fundamental as to "undermin[e] the fairness of a criminal proceeding as a whole," and require reversal "without regard to the mistake's effect on the proceeding." *Dominguez Benitez*, 542 U.S. at 81. Hence, if the plain error was a structural one, the existence of prejudice is generally presumed. *See United States v. Sandoval-Mendoza*, 472 F.3d 645, 652 (9th Cir. 2006). The Supreme Court has "found structural errors only in a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 469 (1997) (listing examples of structural errors). To meet his burden for reversal, the defendant "must prove that there is a 'reasonable probability that, but for the error, he would not have entered the plea.' " *Borowy*, 595 F.3d at 1049 (quoting *Monzon*, 429 F.3d at 1272).

## 2. Analysis

Collins alleges three separate errors affecting his plea of guilty. First, he alleges that the district court was incorrect in assuming that the August 18, 2009 plea to a charge in the original indictment was invalid and required correction. Second, Collins claims the district court's proposing its own resolution of its mistake during the first plea colloquy was a

violation of Rule 11's prohibition against the court participating in plea discussions, and constituted structural error. Third, Collins claims the district court again violated Rule 11 by accepting Collins's August 31, 2009 guilty plea to Count One of the Superseding Indictment without advising Collins of the nature of the charge to which he was pleading.

We hold that the district court's conducting a subsequent hearing to correct the record of its misstatement during the initial plea colloquy was neither plain error, nor structural error.

### a.    Validity of Collins's Original Plea

Collins alleges that the district court erred by improperly attempting to correct Collins's initial plea of guilty from the August 18, 2009 change of plea hearing. Collins contends that although he inadvertently pled to the wrong charge at that hearing—because of the court's reference to "the indictment" instead of the superseding indictment—he insists that the initial plea was nevertheless a validly accepted plea. Collins claims that the plea he entered on August 18, 2009, contravened the language of the plea agreement, and, as such, constituted plain error.

To establish plain error the defendant must show: " '(1) error, (2) that is plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceedings.' " *Borowy*, 595 F.3d at 1049 (quoting *United States v. Benz*, 472 F.3d 657, 659 (9th Cir. 2006)).

**[1]** The rationale behind Collins's first assignment of error is rather tenuous. There is no dispute that the district court incorrectly stated "the indictment," as opposed to "the superseding indictment," during the August 18, 2009 plea colloquy. Likewise, no party disputes that Collins intended to plead to Count One of the First Superseding Indictment, as provided

in the plea agreement. Upon realizing its mistake, the district court called the parties back into court. The court repeatedly asked Collins if he had any objections to the proposed hearing to correct the record, to which Collins repeatedly replied that he did not. The district court, accordingly, made no wrong assumptions in seeking to correct its mistaken colloquy, let alone any reversible errors.

**[2]** The first two elements of the test for reversible plain error are met, as the district court admitted its error on the record, and the error was plain enough. As Collins asserts, the August 18, 2009 plea contravened the intent of parties reflected in their plea agreement. Collins is unable to meet the third element for plain error, however. The subsequent August 31, 2009 hearing corrected the "error," and Collins has shown no adverse effect to his substantial rights, nor any effect on the fairness, integrity or public reputation of the judicial proceedings. *Borowy*, 595 F.3d at 1049. Even if the original plea was technically valid, and in contravention of the plea agreement, the court did not proceed under that plea in sentencing Collins. Moreover, the charges were identical in nature, which further negates any possibility of prejudice or harm to Collins's substantial rights. Collins fails to meet elements three and four of the plain error test.

### b.   The District Court's Participation in Plea Negotiations

Second, Collins claims the district court violated Rule 11's prohibition against the court participating in plea negotiations by proposing a solution to its mistake of referencing "the indictment" at the August 18, 2009 hearing. We review this claim de novo. *United States v. Torres*, 999 F.2d 376, 378 (9th Cir. 1993). Before we do, however, it bears repeating that neither Collins nor the government lodged any objections to the court's proposal of holding an additional hearing to correct the mistake and ensure the record was clear that Collins

was pleading to the intended charge in the First Superseding Indictment.

**[3]** Rule 11(c)(1) provides that "the court must not participate in [plea] negotiations." Fed. R. Crim. P. 11(c). And, indeed, we have interpreted the Rule's prohibition strictly. *See United States v. Gonzalez-Melchor*, 648 F.3d 959, 963 (9th Cir. 2011) (holding that Rule 11(c)(1) establishes "such a bright-line rule that a finding of judicial misconduct in connection with a plea proceeding constitutes plain error and entitles a defendant to withdraw his guilty plea even if the error is identified for the first time on appeal") (internal citations and quotations omitted). The Rule's strict precaution against judicial involvement in plea negotiations is a safeguard against the "risk of coercion," *see id.*, which is present even in cases of seemingly benign involvement by the court.

Collins, however, seeks a finding of judicial misconduct based on the district court's efforts to correct a mere misstatement in the original plea colloquy. He insists that the district court, after identifying that the plea was made to the wrong indictment, should have "left the resolution to the parties."

**[4]** The district court's second hearing, to assure that the record reflected Collins's plea to the superceding indictment as his plea agreement had already provided, cannot reasonably be characterized as "participation" in plea negotiations. There is no evidence or arguments suggesting that the court's proposed hearing to enter a new plea had any influence on the already finalized plea agreement between Collins and the government, which remained intact and unchanged. *See United States v. Frank*, 36 F.3d 898, 902 (9th Cir. 1994) (permitting certain court involvement in the plea process where it "took place after, not before, the parties had concluded their agreement, and the prosecutor had laid it out in open court").[2] Had

---

[2]In *Frank*, where, as here, "the judge . . . was not trying to shape the agreement or persuade either side to accept it," Rule 11 is not violated. 36

the court failed to correct its mistake, its erroneous colloquy would have remained intact, potentially in contravention of the plea agreement.

**[5]** We hold that the court's proposal to correct a misstatement in the plea colloquy to which all parties agreed, precisely so that the intent of the plea agreement would be effectuated, does not violate Rule 11's prohibition of judicial interference.

### c. The Court's Failure to Inform Collins of the Nature of the Charge

In Collins's third alleged Rule 11 error, he claims the district court failed to advise him properly of the nature of the charge to which he was pleading at the final, August 31, 2009 hearing. Specifically, Collins complains that the court violated Rule 11 in failing to explain the relationship between the charge to which he had erroneously pled on August 18, 2009, and the charge to which he was pleading at the August 31, 2009 hearing. Collins claims this was reversible error despite admitting that the court explained, at length, the nature and elements of the charged offense at the August 18, 2009 hearing, and that the charge to which he pled in the original indictment and the charge to which he later pled in the superseding indictment are identical.

**[6]** Rule 11 requires the district court, before it accepts a defendant's plea of guilty or *nolo contendere,* to "inform the

F.3d at 902; *Compare United States v. Torres*, 999 F.2d 376, 378 (9th Cir. 1993) (district court did not violate Rule 11 where parties had already "hammered out" the agreement before presenting to sentencing judge, who then engaged in colloquy to determine the nature of the plea deal); *with United States v. Garfield,* 987 F.2d 1424, 1426-27 (9th Cir. 1993) (district court erred by advising defendant on the merits of pleading guilty); *United States v. Anderson*, 993 F.2d 1435, 1436-38 (9th Cir. 1993) (judge violated Rule 11 by stating before plea agreement had been reached that he would not accept anything less than a guilty plea to all counts charged).

defendant of, and determine that the defendant understands," *inter alia*, "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). Though he did not object at any point during the August 18, or August 31, 2009 hearings, Collins now contends that the colloquy between the district court and Collins at the August 31, 2009 hearing failed to satisfy Rule 11's requirement.

The adequacy of the district court's Rule 11 plea colloquy is subject to our de novo review. *United States v. Minore*, 292 F.3d 1109, 1115 (9th Cir. 2002). Collins relies on *McCarthy v. United States*, 394 U.S. 459 (1969) in demanding that he be permitted to enter a new plea. In *McCarthy*, the Supreme Court held that "a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering to the procedure provided for in Rule 11." *Id.* at 463-64. Rule 11, however, has since been amended, and now specifically provides that not every violation of its terms entitles the defendant to withdraw his guilty plea. Rule 11(h) states that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h).

**[7]** It is true that the district court did not re-conduct the full Rule 11 colloquy at the August 31, 2009 hearing, which may have run afoul of Rule 11's requirements had that hearing been a stand-alone change of plea proceeding. *See, e.g.*, *United States v. Pena*, 314 F.3d 1152, 1156 (9th Cir. 2003) (in which a more thorough plea colloquy nevertheless "failed to comply with Rule 11 because the district court never explained to [the defendant] the nature of the charges against him"). The court and the parties, however, expressly understood the August 31, 2009 hearing to be a continuation of the prior change of plea hearing, in which it is undisputed the court conducted a full plea colloquy.

At the August 18, 2009, hearing the district court went into detail regarding the elements of the violation of 18 U.S.C.

§ 2252(A)(a)(5)(B) for possession of child pornography, and Collins confirmed that he understood the nature of the charge and facts alleged against him. Then, at the August 31, 2009 hearing, the court suggested, and both parties agreed, that repeating the prior colloquy was unnecessary since "the pleading instrument to which [Collins] has pled is the First Superceding [*sic*] Indictment." It was only the court's omission of the word "superseding" which transformed the plea to that of the original indictment at the end of the initial change of plea hearing.

**[8]** The charge to which Collins pled from the original indictment and the charge in the superseding indictment were identical. Any technical noncompliance with Rule 11 at the August 31, 2009 hearing, therefore, was harmless, as the outcome of the proceedings would undoubtedly have remained the same even if the court had decided not to hold the August 31, 2009 hearing. *See United States v. Raineri,* 42 F.3d 36, 41 (9th Cir. 1994) ("Harmless error analysis usually poses the question whether the error influenced the decision-maker or whether the ultimate outcome would have been the same if the error had not been committed[.]"). There is no evidence in the record to suggest that Collins would have done anything other than affirm his guilty plea—as he had done at the prior change of plea hearing—if the court had repeated the full colloquy over again.

**[9]** Because it is abundantly clear from the record of the August 18, 2009 and August 31, 2009 hearings that the court adequately informed Collins of, and Collins confirmed he fully understood, the nature of the charge to which he intended to plea, and to which he ultimately did plea, any formal deficiencies of the August 31, 2009 discussion were harmless and do not warrant reversal. Under Rule 11(h) no reversible error was committed by the abbreviated colloquy in this case.

Collins has failed to identify any structural errors committed by the district court in accepting Collins's plea of guilty

to count one of the superseding indictment, and has failed to make a showing of prejudice which would render any of the alleged deficiencies with the court's procedure in accepting the plea reversible plain errors.

## B.   Instructions Given to the October 2008 Grand Jury

### 1.   Standard of Review

Collins claims, for the first time on appeal, that the district court's instructions to the October 2008 Grand Jury were defective, and as a result the superseding indictment was not returned by a duly constituted grand jury. Objections to the indictment raise questions of law which are reviewed de novo. *United States v. Kahlon*, 38 F.3d 467, 469 (9th Cir. 1994). Under Fed. R. Crim. P. 12(b)(3), failure to present objections based on defects in instituting the prosecution, including defects in the grand jury proceedings, prior to the start of trial, constitutes a waiver thereof. *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 362 (1962); *Kahlon*, 38 F.3d at 469.

Even where an error in the grand jury instructions is brought to the district court's attention prior to conviction, "dismissal of the indictment 'is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.' " *United States v. Caruto*, 663 F.3d 394, 399 (9th Cir. 2011) (quoting *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010)).

### 2.   Analysis

Collins alleges that the instructions made to the October 2008 Grand Jury were improper for: (1) using mandatory language forbidding the grand jury from considering punishment, and (2) providing further misleading instructions which undermined the grand jury's discretionary function. Collins

alleges that the improper instructions constituted structural error, and, as a result, Collins cannot be required to plead to the superseding indictment returned by the October 2008 Grand Jury.

It is well-established that "[t]he Fifth Amendment may be violated if the independence of the grand jury in performing its historical function is substantially infringed." *United States v. Caruto*, 627 F.3d 759, 763 (9th Cir. 2010). In furtherance of our duty to safeguard the grand jury's independence, this Court has condemned instructions to grand juries with impermissible "mandatory" language. *See id.*

Collins complains that the district court's instruction to the jury that "when deciding whether or not to indict, you cannot consider punishment in the event of conviction," was improper because it forbade the jury from considering punishment. The given instruction deviated from the relevant Model Grand Jury Charge, which uses less mandatory phrasing and states that, "you *should not* consider punishment in the event of conviction." Model Grand Jury Charge (MGJC) § 10 (emphasis added). The district court also gave instructions from Model Grand Jury Charges 9,[3] and 25,[4] which Collins also claims unconstitutionally limited the grand jury's autonomous discretion.

Collins acknowledges that both of these latter instructions

---

[3]"You are not able to judge the wisdom of the criminal laws enacted by Congress; that is, whether there should or should not be a federal law designating criminal activity—designating activity as criminal. That's determined by Congress and not for the grand jury." MGJC § 9.

[4]"Your task is to determine whether the government's evidence, as presented to you, is sufficient to cause you to conclude that there is probable cause to believe that the person being investigated committed the offense charged" MGJC § 25. The district court continued, "[t]o put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's belief that the person being investigated is probably guilty of the offense charged." *Id.*

have been previously upheld as constitutional. *See United States v. Navarro-Vargas*, 408 F.3d 1184, 1202-05 (9th Cir. 2004) (en banc); *Caruto*, 663 F.3d at 401. Nevertheless, he challenges them for reflecting the misguided "present legal culture" that discourages grand juries from exercising robust discretion, in contrast to what the framers of the Fifth Amendment intended.

What Collins fails to address, however, is that he did not timely raise these alleged "structural" errors in the instructions given to the October 2008 Grand Jury in district court proceedings. Collins provides no defense—presumably because none exists—as to why he has not waived his challenge to the lawfulness of the grand jury's indictment. The Court, therefore, need not take up the substance of Collins's arguments, much less re-visit the development of the modern grand jury, as the Court did at length in *Navarro-Vargas*, because Collins failed to preserve these challenges in the court below.

**[10]** Fed. R. Crim. P. 12(b)(3)(A)'s language requires any motions challenging the "institution of the prosecution," broadly, to be raised before trial. This Court has consistently held that any challenges to the grand jury proceedings are encompassed within the Rule. *See Kahlon*, 38 F.3d at 469 (" '[I]rregularities in grand jury proceedings' are considered to be defects in the institution of the prosecution within the meaning of Rule 12(b)."). Prior versions of Rule 12(b)'s language even more unambiguously precluded Collins's late challenge to the grand jury's instructions.

The pre-2002 version of Rule 12 expressly included any and all defenses or objections based on defects in the indictment in the class of challenges waived if not brought prior to trial. The previous Rule's subsections (b)(2) and (f) stated, in pertinent part:

> (b) any defense, objection, or request which is capable of determination without the trial of the general

issue may be raised before trial by motion. . . . The following must be raised prior to trial:

> (1) Defenses and objections based on defects in the institution of the prosecution; or

> (2) Defenses and objections based on defects in the indictment . . .

(f) Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, . . . , shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Fed. R. Crim. P. 12 (1991 Rev. Ed.), as excerpted in *United States v. Andrello*, 816 F. Supp. 806, 809 (N.D.N.Y. 1993).

When the Advisory Committee adopted the current version of Rule 12(b), it specifically stated that the changes were "intended to be stylistic only," except to "more clearly indicate that Rule 47 governs any pretrial motions filed under Rule 12, including form and content."[5] Fed. R. Crim. P. 12, Advisory Committee Notes on 2002 Amendments (adding, further, that "[n]o change in practice is intended").

**[11]** Having failed to raise the alleged defects in the instructions to the October 2008 Grand Jury prior to his conviction, and having shown no good cause for granting relief from Rule 12's mandated waiver, Collins has relinquished his opportunity to raise the instructional challenges on appeal.

---

[5]Fed. R. Crim. P. 47 contains guidelines for the form, requirements, and timing of pleading and pretrial motions submitted to the court.

### C.   The Court's Imposition of a Life Term of Supervised Release

### 1.   Standard of Review

The Court's review of Collins's sentence involves a two-step determination for whether the district court abused its discretion. First, we review the sentence for any significant procedural errors. *United States v. Carty*, 520 F.3d 984, 992-93 (9th Cir. 2008) (en banc). As a matter of procedural due process, "a sentencing judge must explain a sentence sufficiently to communicate 'that a reasoned decision has been made' and 'permit meaningful appellate review.' " *United States v. Rudd*, 662 F.3d 1257, 1260 (9th Cir. 2011); 18 U.S.C. § 3553(a). The sufficiency of a court's explanation of its sentence is case specific. *See Carty*, 520 F.3d at 992.

In the second step, we review the sentence for its substantive reasonableness, accounting for the "totality of the circumstances" presented to the district court. *United States v. Blinkinsop*, 606 F.3d 1110, 1116 (9th Cir. 2010). This Court, tracking the language of 18 U.S.C. § 3553(a), has held that "[a] substantively reasonable sentence is one that is 'sufficient, but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals." *Rudd*, 662 F.3d at 1260.

The length of a term of supervised release is reviewed for its reasonableness using the same, deferential, abuse-of-discretion standard used for challenges to any other part of the defendant's sentence. *United States v. Apodaca*, 641 F.3d 1077, 1079 (9th Cir. 2011), *cert. denied*, No. 11-5314, 2011 U.S. LEXIS 5666 (Oct. 3, 2011). Additionally, we review the district court's decision to impose a particular condition of a term of supervised release for an abuse of discretion. *Rudd*, 662 F.3d at 1259; *United States v. Stoterau*, 524 F.3d 988, 1002 (9th Cir. 2008).

## 2. Analysis

Collins challenges the district court's procedural and substantive reasonableness in imposing the lifetime term of supervised release with Condition 15, which prohibits him from residing within 2,000 feet of parks, schools, and other child areas, particularly in conjunction with Condition 11, which prohibits frequenting or loitering "within 100 feet of school yards, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or any other places primarily used by persons under the age of 18." Collins also argues that Condition 15 violates his fundamental constitutional rights of travel, association, and enjoyment of property, as well as his Eighth Amendment right to be free from excessive punishment.

### a. Procedural Reasonableness of the Lifetime Term of Supervised Release

When reviewing a term of supervised release for procedural error, "we consider the same factors" that pertain to reviewing terms of imprisonment. *Apodaca*, 641 F.3d at 1081. To be a procedurally proper sentence, the district court must do the following:

> (1) correctly calculate the Sentencing Guidelines range; (2) treat the Guidelines as advisory; (3) consider the 18 U.S.C. § 3553(a) factors; (4) choose a sentence that is not based on clearly erroneous facts; (5) adequately explain the sentence; and (6) not presume that the Guidelines range is reasonable.

*Blinkinsop*, 606 F.3d at 1114 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Collins's claims of procedural error relate to the burden of proof that the district court adopted in its determination that a lifetime term of supervised release with Conditions 11 and

15 was appropriate in this case. The appropriate burden of proof for a court's determination during sentencing is a question of law which we review de novo. *See United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010) (stating that "[o]rdinarily, a district court uses a preponderance of the evidence standard of proof when finding facts at sentencing").

**[12]** Collins claims that the district court improperly presumed the reasonableness of the Sentencing Guidelines' recommendation of a lifetime period of supervised release, by treating the lifetime length of supervised release as the "base line" at the sentencing hearing. For Collins's offense of possession of child pornography, the Sentencing Guidelines authorize a term of supervised release for no less than five years, and the statutory maximum of a life term is recommended. *See* 18 U.S.C. § 3583(k); USSG § 5D1.2(b). Nevertheless, it would constitute procedural error for the court to "attach[ ] a presumption of reasonableness to the Guidelines range or weight[ ] the Guidelines range more heavily than other § 3553(a) factors." *Carty*, 520 F.3d at 994.

**[13]** Despite Collins's claims to the contrary, the court's stated reasoning behind imposing the lifetime term as part of Collins's sentence shows that the court duly considered whether the recommended lifetime duration of supervised release was reasonable. The court made a point to clarify that it "must make a particularized determination and must not rely on generalities" in light of "the policy of the Guidelines to impose a maximum term of supervised release." The court then discussed the particular nature and characteristics of Collins's offense which led it to find a lifetime term warranted, as Section 3553(a) requires. Finally, the court's attention to the particulars of Collins's case is reflected in its Order allowing Collins to "seek termination of supervised release" after a number of years. *Id.*

**[14]** It is entirely appropriate to do as the court did here and treat the Guidelines recommendation as "the starting

point and the initial benchmark" for arriving at its sentence, so long as the court does not simply adopt the recommendation without considering the Section 3553(a) factors. *Carty*, 520 F.3d at 991. As the trial judge opined, "[t]he court is mindful that the Guidelines are only a starting point in crafting a reasonable sentence." Collins's claim that the court inappropriately presumed the reasonableness of the Guidelines in arriving at the term of supervised release lacks evidentiary support and is unpersuasive.

### b. Procedural Reasonableness of the Special Conditions of Release

Collins also attacks the reasonableness of the special conditions of his life term of supervised release, in particular Condition 15. Collins claims the residency restrictions of Condition 15 constitute an "extremely disproportionate effect on the sentence," and the district court should have required the government to satisfy a heightened "clear and convincing" standard before imposing Condition 15. *See, e.g.*, *Restrepo*, 946 F.2d at 660; *United States v. Berger*, 587 F.3d 1038, 1047 (9th Cir. 2009). Collins also insists that the district court's justification for imposing the onerous restrictions of Condition 15 was insufficient, and that the court misapplied prior precedent.

Pursuant to 18 U.S.C. § 3583(d),[6] a district court has discre-

---

[6]Section 3583(d) states, in pertinent part, that in addition to the mandatory conditions of release,

> The court may order, as a further condition of supervised release, to the extent that such condition—

> (1) is reasonably related to the factors set forth in section [3553(a)] . . . and;

> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section [3553(a)] . . . and;

> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

tion to impose special conditions of supervised release, so long as the conditions are:

> reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender; involve no greater deprivation of liberty than necessary to achieve those goals; and are consistent with any pertinent policy statements issued by the Sentencing Commission.

*United States v. Riley*, 576 F.3d 1046, 1048 (9th Cir. 2009).

In weighing these factors for a particular defendant, this Court has held that "the government 'shoulders the burden of proving that a particular condition of supervised release involves no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release.' " *Id.* (quoting *United States v. Weber*, 451 F.3d 552, 559 (9th Cir. 2006)); *see also Rudd*, 662 F.3d at 1260 ("The burden of establishing the necessity of any condition falls on the government.").

We reject Collins's proposed application of the heightened "clear and convincing" burden to the government's request for the lifetime term of release with Condition 15. The clear and convincing standard has been reserved for "exceptional" enhancements of the defendant's offense level calculation. *See United States v. Felix*, 561 F.3d 1036, 1047 (9th Cir. 2009). Condition 15 is a special condition of release, not an enhancement to Collins's sentence. The clear and convincing standard, historically, has only been applied to sentencing courts' findings in support of offense level enhancements, never for terms of supervised release.

---

> [and] any condition set forth as a discretionary condition of probation in section 3563(b) [18 USCS § 3563(b)] and any other condition it considers to be appropriate.

Although we decline to impose retroactively a heightened standard of proof on the government to support its requested conditions of release, we must still review the district court's reasoning for each part of the sentence, including the imposed conditions of supervised release, for whether the district court adequately considered the 18 U.S.C. § 3553(a) factors.

**[15]** It is well-established law that "it would be procedural error . . . to fail adequately to explain the sentence selected." *Rudd,* 662 F.3d at 1260 (quoting *Carty*, 520 F.3d at 993). While "we have held that the district court 'need not state at sentencing the reasons for imposing each condition of supervised release," *id.,* that is only true "*if [the reasoning] is apparent from the record." Id.* (citations omitted) (concluding that "[t]he touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)"). It is not clear that the district court provided adequate support for imposing the highly restrictive supervised release conditions in this case.

**[16]** There can be no doubt that Collins's conditions of supervised release impose significant—even extreme—restrictions on his liberty. The residency restriction effectively prevents Collins from living in any urban area.[7] *See Rudd*, 662 F.3d at 1264 (stating that, additionally, "[s]everal courts have also found that similar residency restrictions subject defendants to a state of 'constant eviction,' because the prohibited locations could potentially move or open in new places"). Such a serious restriction requires sufficient explanation, par-

---

[7]The California Coalition on Sexual Offending's website provides maps, produced by the Senate Office of Demographics, showing the exclusion zones pertaining to Cal. Penal Code § 3003.5(b), which prohibits a registered sex offender from residing "within 2000 feet of any public or private school," or a subset of parks "where children regularly gather." One exclusion zone map for Central California, for example, shows that only a few isolated areas remain in the Greater Los Angeles area for defendants to live when subject to the restriction.

ticularly where, as here, the reasonableness of the restriction is not at all clear from the record. The district court, however, justified the residency restriction here by simply stating that the California Penal Code imposes a similar restriction on all sex offenders, and without providing any specific facts about Collins's case that warranted the restriction.

While the Guidelines recommend a lifetime term of supervised release for Collins's class of sex offenders, USSG § 5D1.2(b), the particular residency restriction in Condition 15 is not recommended, nor is it listed as one of the standard optional conditions of supervised release. *See* USSG § 5D1.3(e). Moreover, the Ninth Circuit has recently held that, a "growing body of empirical research casts serious doubts on the assumption that persons viewing child pornography on the Internet are equally dangerous and likely to commit serious offenses involving sexual contact as are other offenders." *Apodaca*, 641 F.3d at 1083.

Here, rather than weighing the requisite 18 U.S.C. § 3553(a) factors to determine the appropriateness of the residency restriction, the district court rationalized Condition 15 simply by stating that, "[t]he short answer is that as a general matter, Collins must follow the law as a condition of supervised release, and this restriction is mandated by California law." While the court also added that Condition 15 "is a proper measure to ensure protection of the public given the nature of the crime, and the Ninth Circuit has approved even more stringent restrictions," it did not at all explain why Collins's crime, of possessing child pornography, warrants forcing him to live in rural areas, at least 2,000 feet from schools, parks, public swimming pools, playgrounds, youth centers, video arcade facilities, or *any other places* deemed by his probation officer to be "primarily used by persons under the age of 18." *Id.*

**[17]** Collins's lifetime term with Condition 15 places his supervised release in league with the most restrictive terms,

imposed on the most serious child molesters. Collins's crime was an internet-only offense, and he has no prior sex crime convictions. While he admitted to having had a relationship with the 15-year-old minor, "M.A.," which arguably may have provided some support for the restriction, the district court should have explained why the lifetime term with the severe residency restrictions "involve[d] no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *Daniels*, 541 F.3d at 924; as quoted in *Rudd*, 662 F.3d at 1263 (in which the Court held that, "[i]n the absence of any explanation of how the chosen distance furthers the purposes of Rudd's supervised release, the choice of 2,000 feet appears arbitrary").

The district court, however, appears not to have considered the appropriate sentencing factors when it imposed Condition 15. By only vaguely referencing just one of the factors (protection of minors), the court's Order "neither communicates 'that a reasoned decision has been made,' nor is sufficient to 'permit meaningful appellate review.' " *Rudd*, 662 F.3d at 1263 (quoting *Carty*, 520 F.3d at 992).

The district court's reliance on the 2,000-foot residency restriction for all registered sex offenders under Cal. Penal Code 3003.5(b) for justifying its imposition of Condition 15, is misplaced. We agree with the district court, that, having been convicted of a sex offense punishable as an offense described in Cal. Penal Code § 290(c),[8] Collins is required to register as a sex offender in California.[9] Once registered as

---

[8]Section 290.005(a) provides that any person "convicted in any other court, including any state, *federal*, or military court, of any offense that . . . would have been punishable as one or more of the offenses described in subdivision (c) of Section 290" shall register as a sex offender. Section 290(c) includes possession of child pornography in violation of Cal. Penal Code § 311.1 in its list of described offenses requiring sex offender registration.

[9]Federal law, in turn, requires that, "[t]he court shall order, as an explicit condition of supervised release for a person required to register

such, he will be subject to Cal. Penal Code § 3003.5(b)'s residency restriction, which is substantially similar to Condition 15's.[10] *See, e.g.*, *U.S. v. Davidson*, 246 F.3d 1240, 1243-44 (9th Cir. 2001) (explaining that "Section 290[ ] requires any person who has been convicted of one of a series of enumerated state law offenses, or any federal offense that would have been punishable as one of those enumerated state law offenses, to register as a sex offender for the rest of his or her life while residing in . . . or . . . while located within California").

The residency restriction imposed by the court, however, is not identical to the California Penal Code's,[11] and even if it were, the district court still has a duty to analyze the appropriateness of Condition 15 pursuant to the required federal sentencing factors, notwithstanding any related state law restrictions. *See Blinkinsop*, 606 F.3d at 1116 ("We assume that district judges know the law and understand their obligation to consider all of the § 3553(a) factors.") (internal quotations omitted).

**[18]** In sum, it was procedural error for the district judge to impose a residency restriction with Condition 15's duration

under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act." 18 U.S.C. § 3583. This was ordered by Judge Selna, and Collins assented to these requirements in the proceedings below.

[10]Section 3003.5(b) provides, "[n]otwithstanding any other provision of law, it is unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather." Cal. Penal Code § 3003.5(b).

[11]Condition 15 is significantly broader and more restrictive than Cal. Penal Code 3003.5(b). In addition to requiring Collins to reside at least 2,000 feet from parks and schools, Condition 15 adds to that list "swimming pools, playgrounds, youth centers, video arcade facilities, or any other places primarily used by persons under the age of 18," and finally requiring that any change in residence be pre-approved by his probation officer.

and breadth as part of Collins's federal sentence without an analysis of the basis therefor per the federal sentencing regime. While the practical effect of removing the 2,000-foot restriction from his sentence may be minimal, the Penal Code's restriction in Section 3003.5(b) could be amended by the state legislature to 1,000 feet or "within sight of" children, during Collins's life. The statute could also be repealed or held unconstitutional by a state or federal court. Under his current sentence, Collins would still be bound by the 2,000-foot restriction of Condition 15, regardless of what changes may be made to Section 3003.5(b). Moreover, Collins may reside in some other state where he must conform to that state's law, and not California's.

**[19]** We vacate the residency restriction and remand Collins's sentence to the district court to provide the appropriate analysis and support for its imposed terms and conditions of supervised release.

### c. Substantive Reasonableness of Condition 15

The next step in our review of Collins's conditions of release would be to evaluate them for substantive reasonableness. The sentencing court "enjoys significant discretion in crafting terms of supervised release for criminal defendants, including the authority to impose restrictions that infringe on fundamental rights," but that discretion "is not, however, boundless." *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006). In *Weber*, the Court held that "conditions of supervised release are permissible only if they are reasonably related to the goal of deterrence, protection of the public, or rehabilitation of the offender." *Id.* at 558.

There is good reason to suspect that the imposition of the sweeping residency restriction in Condition 15 for life is substantively unreasonable for Collins's conviction of possession of child pornography.[12] Because we have concluded the dis-

---

[12]In this past year's decision, *United States v. Apodaca*, for example, the Court questioned the reasonableness of lifetime terms of supervised

trict court procedurally erred by failing to provide adequate reasons for imposing Condition 15 where the reasons for such a condition were not clear form the record alone, it follows that we do not reach the question of the substantive reasonableness of Collins's conditions of release. We remand the determination of the substantive reasonableness of Condition 15 to the district court, as part of its reconsideration under 18 U.S.C. § 3553(a) for whether the residency restriction involves "a greater deprivation of liberty than is reasonably necessary." *Rudd*, 622 F.3d at 1264 (quoting *Daniels*, 541 F.3d at 924).

### d. Constitutional Challenges to Condition 15

Collins raises a number of constitutional challenges to the restrictions posed by the lifetime term of supervised release containing Condition 15. Collins claims that Condition 15's residency restriction is so overbroad and punitive that it violates four separate fundamental liberty interests: his right to interstate travel; intrastate travel; freedom of association; and freedom of assembly. Collins also claims that his fundamental right to acquire, own, possess and enjoy property is unconstitutionally abridged by Condition 15, because under the condition he must move whenever a restricted child-oriented establishment is opened within a 2,000-foot radius of his residence. Finally, he contends that the term constitutes excessive punishment prohibited by the Eighth Amendment.

The Court need not address the constitutional arguments against Condition 15 at this time, having already decided to remand the supervised release portion of Collins's sentence to

---

release, generally, for possession only child pornography defendants, as distinguishable from "hands on" or "contact" sex offenders, stating "there is substantial evidence indicating that the current Guidelines-recommended sentence for possession-only offenders may be difficult to support." 641 F.3d at 1084.

the district court for reconsideration. The Court also leaves open, for now, the question of the constitutionality of the California Penal Code 3003.5(b) residency restriction for lower-risk defendants of Collins's class, as that restriction was not objected to by Collins below, and the issue was not brought before the Court on appeal.

## IV. CONCLUSION

For the foregoing reasons, Collins's conviction is AFFIRMED. The portion of Collins's sentence containing the lifetime term of supervised release is VACATED and REMANDED to the district court, with instructions for the court to consider all the required factors under 18 U.S.C. § 3553(a), and adequately articulate its rationale for imposing a term of supervised release with a duration and special conditions that are reasonable in light of the circumstances of this case and the goals of sentencing.