NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 16 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50137 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 2:10-cr-00813-SVW-1 |
| EUGENE DARRYL TEMKIN, | |
| Defendant-Appellant. | MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted October 2, 2017
Pasadena, California

Before: RAWLINSON and N.R. SMITH, Circuit Judges, and KORMAN,**
District Judge.

Eugene Temkin was convicted principally of murder for hire in violation of

18 U.S.C. § 1958(a), and he was sentenced initially to 72 months' incarceration.

*See United States v. Temkin*, 797 F.3d 682, 686–88 (9th Cir. 2015). The sentence

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

was vacated on appeal because of an error in the calculation of the Sentencing Guidelines. *See id.* at 692–96. Temkin was then resentenced to 144 months, based on the new range of 210–262 months that we found applicable, *see id.* at 695 & n.5, and on new findings regarding Temkin's post-conviction conduct. On this appeal, Temkin argues that the district court erred by not expressly applying the "clear and convincing" standard to its factual findings at resentencing. We affirm.

As a general rule, a district court's factual findings at sentencing need only be established by a preponderance of the evidence. *See, e.g.*, *United States v. Hymas*, 780 F.3d 1285, 1289 (9th Cir. 2015). We have recognized an exception to this rule "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." *Id.* (quoting *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000)). In such scenarios, we have applied the "higher clear and convincing standard." *Id*.

However, we have applied this exception "only in the case of federal guideline sentencing enhancements."[1] *United States v. Felix*, 561 F.3d 1036, 1046

---

[1] The Government argues that, because the Guidelines have been advisory since *United States v. Booker*, 543 U.S. 220, 227 (2005), we should abandon the "disproportionate effect" exception entirely. We have, however, expressly held "that the clear and convincing standard still pertains post-*Booker* for an enhancement applied by the district court that has an extremely disproportionate effect on the sentence imposed." *United States v. Staten*, 466 F.3d 708, 718 (9th Cir. 2006). Contrary to the Government's argument, *Beckles v. United States*, 137 S. Ct. 886 (2017), does not justify overruling *Staten*. *Beckles* just held that "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the

(9th Cir. 2009) (quoting *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005)).

Indeed, when asked to extend the exception beyond Guidelines enhancements, we

have refused to do so. *See, e.g.*, *United States v. Collins*, 684 F.3d 873, 889 (9th

Cir. 2012). Here, the challenged findings did not trigger any Guidelines

enhancements. Rather, they influenced the extent to which the district court

*downwardly* departed from the Guidelines. The "disproportionate effect"

exception, therefore, does not apply here.

Moreover, even if it did, the findings regarding Temkin's post-conviction

conduct while incarcerated at FCI Terminal Island did not have a disproportionate

effect on his sentence. Originally, the district court sentenced Temkin to 72

months—40.5% below the low end (121 months) of his initial Guidelines range. At

resentencing, taking the Terminal Island findings into consideration, the district

court sentenced Temkin to 144 months—31.4% below the low end (210 months)

of the higher, recalculated range. To the extent the Terminal Island findings

affected or "enhanced" Temkin's sentence, they seemingly did so by resulting in a

downward departure of only 31.4% and not 40.5%.[2]

---

Due Process Clause," and it expressly did "not render the advisory Guidelines immune from constitutional scrutiny." *Id.* at 895. *Beckles* thus does not foreclose our ability "to satisfy due process concerns" by sometimes requiring a heightened standard of proof. *Staten*, 466 F.3d at 717.

[2] Temkin argues that the Terminal Island findings "enhanced" his sentence by 72 months. However, in increasing the sentence by that amount, the

This was not disproportionate. In determining what constitutes a disproportionate effect on a sentence, we look to the "totality of the circumstances" and apply a six-factor test first articulated in *United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir. 2000), *cert. granted and judgment vacated on other grounds*, 532 U.S. 901 (2001). *E.g.*, *United States v. Pike*, 473 F.3d 1053, 1057 (9th Cir. 2007). We are satisfied that Temkin's sentence was not disproportionate under that test, but we need not engage in a discussion of the *Valensia* factors because clear and convincing proof did support the district court's finding.

To meet the clear and convincing standard, "a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are [sic] highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Here, overwhelming evidence supported the district court's finding that Temkin, while incarcerated at Terminal Island, attempted to recruit a fellow inmate in a plan to extort and possibly murder Michael Hershman and his associates. The government provided a sheet of paper that Temkin gave to the inmate, containing Hershman's email addresses, along with the names of his

---

district court not only considered the Terminal Island findings but also that we had increased the Guidelines range from 121–151 to 210–262 months. Therefore, the findings alone did not result in the 72-month increase.

16-50137

children, in-laws, friends, business associates, and casinos. The evidence also consisted of a recorded conversation between Temkin and the inmate, in which Temkin made several statements suggesting he believed he was recruiting the inmate to extort and murder Hershman and others. Even more damning: the FBI provided the inmate with false contact information for "a purported Russian hitman," which the inmate relayed to Temkin. Around a month later, the inmate told the FBI that Temkin had mailed to the "hitman" photocopies of the driver's licenses of Hershman, Hershman's wife, and another person, as well as the passport photos of Hershman's wife and daughter. Soon thereafter, those documents arrived at the P.O. Box the FBI had provided. And finally, there was a transcript of a phone call that Temkin made to the "Russian hitman," in which Temkin stated "I've been trying to get ahold of you for some time" and "[e]verything else should be available to you with a little research and uh a bit of understanding as to things, and, as they transpired." This record provides "clear and convincing" evidence that Temkin, while at Terminal Island, actively attempted to arrange for the extortion and death of Hershman.[3]

**AFFIRMED.**

---

[3]    To the extent that this discussion of the events at Terminal Island discloses information from sealed portions of the record, we unseal those portions of the record for the limited purpose of referencing the events discussed in this disposition.